#26447-rev & rem-GAS

**2013 S.D. 41**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

VELOCITY INVESTMENTS, LLC,                     Plaintiff and Appellee,

    v.

DYBVIG INSTALLATIONS, INC.
and JILL R. DYBVIG and
DAVID J. DYBVIG, as
Personal Guarantors,                                           Defendants and Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
CUSTER COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MARY THORSTENSON
Retired Circuit Court Judge

\* \* \* \*

ROBERT J. BREIT
DAVID L. EDWARDS of
Breit Law Office, PC
Sioux Falls, South Dakota                     Attorneys for plaintiff
                                                                 and appellee.


MARK F. MARSHALL of
Bangs, McCullen, Butler,
  Foye & Simmons, LLP
Rapid City, South Dakota                     Attorneys for defendants
                                                                 and appellants.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 12, 2013

OPINION FILED **06/05/13**

#26447

SEVERSON, Justice

[¶1.]        Dybvig Installations entered into an agreement with Wells Fargo for a business line of credit, which eventually went into default.  Velocity Investments, the alleged successor in interest to Wells Fargo, filed suit to collect against Dybvig Installations and Jill R. and David J. Dybvig as personal guarantors of the debt.  Velocity eventually filed a motion for summary judgment after the Dybvigs, acting pro se, failed to respond to Velocity's statement of material facts and requests for admissions.  The trial court granted the motion for summary judgment.  We reverse and remand.

## BACKGROUND

[¶2.]        Jill and David Dybvig owned a corporation named Dybvig Installations, Inc.  In December 2006, Dybvig Installations entered into an agreement with Wells Fargo for a line of credit for the business.  The original amount of the line of credit was $25,000.  The Dybvigs signed a document titled "Business Direct Credit Application" with the subtitle "Agreement and Personal Guarantee."  David signed the document with his name, followed by President, Dybvig Installations.  Jill signed the document with her name, followed by Secretary, Dybvig Installations.  The Dybvigs allege that when they signed the document a Wells Fargo representative told them that they were not personally guaranteeing the debt because it was a business line of credit.  The Wells Fargo employee allegedly told them that because the line of credit was for their business, the Dybvigs should sign the document as officers of the corporation.

- 1 -

[¶3.] Dybvig Installations defaulted on the line of credit. On June 21, 2011, Velocity Investments filed suit to collect $43,657.11 on the original $25,000 line of credit without any supporting explanation or documentation. Velocity's suit was filed against Dybvig Installations and Jill and David Dybvig as personal guarantors of the debt. The Dybvigs, then acting pro se, sent a response letter to Velocity dated July 18, 2011, stating that their corporation was bankrupt and that they were not personal guarantors for the business line of credit. Velocity treated this letter as an answer to their complaint.

[¶4.] On November 3, 2011, the Dybvigs sent another letter to Velocity. In the letter, the Dybvigs again stated that they were told by a Wells Fargo employee that they were signing for the corporation and not personally guaranteeing the loan. The Dybvigs also stated that they spoke with an attorney and that they believed that Velocity violated the Fair Debt Collection Practices Act by repeatedly calling the Dybvigs. The Dybvigs requested a legible copy of the entire loan document and the name of the Wells Fargo employee who provided the paperwork.

[¶5.] Velocity served the Dybvigs with requests for admissions on February 25, 2012. The Dybvigs, still acting pro se, did not respond within the 30 days required by statute. Thus, under SDCL 15-6-36(a), the requests for admissions were deemed admitted. On April 3, 2012, Velocity moved for summary judgment against Dybvig Installations and the Dybvigs. Velocity also served a statement of undisputed material facts on the Dybvigs.

[¶6.] The Dybvigs responded with a letter on May 9, 2012. The letter again asserted that the Dybvigs did not personally guarantee the loan and that they had

not received a legible copy of the "Business Direct Credit Application" document. Further, the Dybvigs referenced the Fair Debt Collection Practices Act and requested documentation and "validation" of the amount owed because they disputed the amount of the loan.

[¶7.]     The trial court held a hearing on the motion for summary judgment on May 17, 2012. The Dybvigs appeared pro se. The trial court granted Velocity's motion for summary judgment after finding that the Dybvigs did not raise any dispute of material fact regarding their liability as guarantors, but a judgment was not signed until June 28, 2012.

[¶8.]     Prior to the entry of judgment, the Dybvigs retained counsel, who made an initial appearance on June 4, 2012. On June 4, 2012, Dybvigs moved for relief from the judgment based on SDCL 15-6-60(b)(6), which allows relief for "[a]ny other reason justifying relief from operation of the judgment." Also on June 4, 2012, the Dybvigs moved for leave to file answers to requests for admissions based on SDCL 15-6-36(b), which authorizes the court to permit withdrawal or amendments of admissions. The trial court heard arguments on both motions on June 28, 2012, and found that because the Dybvigs failed to respond to the statement of undisputed material facts, they no longer had a basis to seek relief from discovery matters that preceded the motion for summary judgment. Further, the trial court found that the Dybvigs did not show that exceptional circumstances existed and did not meet their burden to show excusable neglect for relief from judgment. A judgment was signed and filed for $43,657.11 plus $175.10 for Velocity's costs on June 28, 2012, *nunc pro tunc* to May 17, 2012.

[¶9.] The Dybvigs appeal. They argue that (1) the trial court abused its discretion by denying Dybvigs' motion for leave to answer requests for admissions, (2) the trial court abused its discretion by denying Dybvigs' motion for relief from judgment, and (3) the trial court erred by granting Velocity's motion for summary judgment.

## STANDARD OF REVIEW

[¶10.] This Court views "motion[s] to permit late filing of [ ] answers to the requests for admissions as tantamount to a motion for withdrawal or amendment of the admissions." *Tank v. Munstedt*, 504 N.W.2d 866, 868 (S.D. 1993). "A trial court's decision on a motion to withdraw admissions is reviewed under the abuse of discretion standard of review." *Id.* (citing *American Auto. Ass'n v. AAA Legal Clinic*, 930 F.2d 1117, 1119 (5th Cir. 1991) and *Farr Man & Co., Inc. v. M/V ROZITA*, 903 F.2d 871, 876 (1st Cir. 1990)). Our standard of review for summary judgment is well settled:

> We must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Jacobson v. Leisinger*, 2008 S.D. 19, ¶ 24, 746 N.W.2d 739, 745 (quoting *Cooper v. James,* 2001 S.D. 59, ¶ 6, 627 N.W.2d 784, 787).

## DISCUSSION

[¶11.]    **(1) Whether the trial court abused its discretion by denying the Dybvigs' motion for leave to answer requests for admissions.**

[¶12.]    A trial court may permit withdrawal or amendments of admissions "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining [the] action or defense on the merits." SDCL 15-6-36(b). *See also AgFirst Farmers Co-op v. Diamond C Dairy, LLC*, 2013 S.D. 19, ¶¶ 24-25, 827 N.W.2d 843, 850 (requiring trial courts use the two-part test to determine "whether to allow amendment or withdrawal of a party's admission"). We have previously expressed our "preference that matters be resolved on their merits and not on technical violations of the discovery rules." *Tank*, 504 N.W.2d at 868. "'Provision is made for withdrawal or amendment of an admission. This provision emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice.'" *Id.* at 869 (quoting *Farr Man & Co., Inc.,* 903 F.2d at 876).

[¶13.]    Just as in *Tank*, allowing the Dybvigs to answer the requests for admissions would serve the presentation of the merits of this case because the merits were not reached. *See id.* at 868. Because allowing the Dybvigs to answer would serve the presentation of the merits of the case, Velocity needed to demonstrate to the trial court that it would be prejudiced if the Dybvigs were allowed to answer. In this case,

> [t]he prejudice contemplated by the Rule is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Rather, it relates to the difficulty a party may face in proving its case, *e.g.,* caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions.

*Id.* at 869 (quoting *Farr Man & Co., Inc.*, 903 F.2d at 876). Velocity does not argue that it would have difficulty proving its case caused by the withdrawal of admissions or that the answer to requests for admissions would come too near a trial date. Thus, Velocity fails to demonstrate the prejudice required by the statute. Because the trial court did not reach the merits of the case and there was no demonstration of prejudice as required by SDCL 15-6-36(b), the trial court abused its discretion in denying the Dybvigs' motion to answer the requests for admissions.

[¶14.] **(2) Whether the trial court erred in granting Velocity's motion for summary judgment.**

[¶15.] The record reveals that there are a number of factual questions and unresolved legal issues related to the key document in this litigation. The Dybvigs signed the "Business Direct Credit Application," and included after their signatures designations as officers of Dybvig Installations. Outside of the signatures of the Dybvigs, the title of the document, and the notation that $25,000 of credit was requested, the body of the "Business Direct Credit Application" copy presented by Velocity is totally illegible and incomprehensible. Velocity seeks a judgment of $43,657.11 with no original document, no explanation as to the calculation of the money due, no documentation of the discrepancy between the original line of credit and the judgment, no assignment from the original party, Wells Fargo, and no showing as to why Velocity is a proper party to this suit. It is impossible to read the

copy of the document upon which this litigation is based. Because we cannot read the document, we cannot determine from the language what the Dybvigs allegedly guaranteed. The document also contains a blacked out square next to the Dybvigs names in the heading, and we cannot decipher what the square blacks out. The document may as well be written in hieroglyphics. Ultimately, we are unable to read the key document in this litigation. The record substantiates that the Dybvigs repeatedly requested a legible copy of the document—none was produced and none was before the trial court. Further, there are genuine issues of material fact and law regarding the amount of debt and what the Dybvigs agreed to in signing the "Business Direct Credit Application." There is also an issue of law and fact regarding whether the Dybvigs' signatures were as corporate officers, rather than personal guarantors.

[¶16.] From our review of the record, it is clear that the trial court granted summary judgment solely based upon the Dybvigs' failure to respond to the request for admissions supporting a statement of undisputed facts. Since we determined that the trial court erred in denying the Dybvigs' motion to answer the request for admissions, genuine issues of material fact still exist. Because Velocity did not prove entitlement to judgment as a matter of law, the motion for summary judgment should have been denied. Based on our reversal of the summary judgment, we need not address the motion for relief under SDCL 15-6-60(b)(6).

## CONCLUSION

[¶17.] The trial court abused its discretion by denying the Dybvigs' motion for leave to answer requests for admissions and erred in granting Velocity's motion for

summary judgment.  Based on this disposition, we need not address the Dybvigs'

request for relief under SDCL 15-6-60(b)(6).  We reverse and remand.

[¶18.]        GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and

WILBUR, Justices, concur.