#26680-rev & rem-DG
**2014 S.D. 14**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JONATHAN "JON" QUINN,
Individually and as Guardian
Ad Litem of H.Q., a Minor Child
and TAMMY FASCHING,
Individually, Separately
and Together,                                             Plaintiffs and Appellants,


v.


FARMERS INSURANCE EXCHANGE,
a Member of FARMERS INSURANCE
GROUP OF COMPANIES; and TRUCK
INSURANCE EXCHANGE, a Member of
FARMERS INSURANCE GROUP OF
COMPANIES, Individually and
Together, Jointly and Severally,                         Defendants and Appellees.

\* \* \* \*
APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA
\* \* \* \*
THE HONORABLE JEFF W. DAVIS
Judge
\* \* \* \*

GEORGE J. NELSON
Rapid City, South Dakota                                 Attorney for plaintiffs
                                                         and appellants.

THOMAS J. WELK
MICHAEL F. TOBIN
MEGHANN M. JOYCE
Boyce, Greenfield, Pashby &
  Welk, LLP
Sioux Falls, South Dakota                                Attorneys for defendants
                                                         and appellees.

\* \* \* \*

                                                         CONSIDERED ON BRIEFS
                                                         ON JANUARY 14, 2014
                                                         OPINION FILED **03/12/14**

#26680

GILBERTSON, Chief Justice

[¶1.] Jonathan Quinn, individually and as guardian ad litem for H.Q., a minor child, and Tammy Fasching, Appellants, appeal a circuit court order granting summary judgment in favor of Appellees Truck Insurance Exchange and Farmers Insurance Exchange. We reverse and remand.

## Facts and Procedural History

[¶2.] Doug Hamilton owned over twenty commercial and residential properties in Rapid City and Spearfish, South Dakota, through various property companies, including Barker & Little, Incorporated (Barker & Little). Barker & Little owned several multi-unit apartment buildings, including an apartment building at 816 Saint Joseph Street in Rapid City. On January 12, 2004, Jonathan Quinn and his family (Quinn) became residential tenants of Barker & Little in Apartment #311 at 816 Saint Joseph Street.

[¶3.] In June of 2005, Quinn's 31-month old daughter, H.Q., began to suffer from hair loss, vomiting, inability to focus, and other health problems. Toxicity tests revealed that H.Q.'s blood contained dangerously high levels of lead. Doctors diagnosed H.Q. with lead poisoning and determined that H.Q. suffered permanent brain and nervous system damage as a result of the lead poisoning. H.Q.'s doctor instructed the family to leave their apartment and hospitalize H.Q. immediately. A qualified inspector examined the apartment and informed Quinn that peeling and flaking paint and paint dust in the apartment contained high concentrations of lead.

[¶4.]     In January of 2006, Barker & Little commenced a lawsuit in Pennington County small claims court against Quinn for non-payment of rent. In response, Quinn removed the small claims action to circuit court and filed a counterclaim against Barker & Little for injuries H.Q. sustained as a result of high concentrations of lead in the leased premises. Quinn alleged that Barker & Little was negligent in failing to remove the peeling and flaking paint from the apartment or warn Quinn and his family of the danger. Barker & Little tendered the claim to Farmers Insurance Exchange (Farmers) and Truck Insurance Exchange (Truck)[1] through Dave Schmidt Insurance Agency. In a March 9, 2006 letter from George Gnesda of Truck on behalf of Farmers, Farmers declined to defend Barker & Little.

[¶5.]     The letter stated that Farmers would not provide defense or coverage under the $1 million Commercial Apartment Policy it sold to Barker & Little. Farmers asserted that an exclusion identified as "E6036," entitled "Lead Poisoning and Contamination Exclusion," negated bodily injury coverage for lead-based paint claims. The letter also indicated that the $5 million Umbrella Policy issued to Barker & Little excluded coverage for lead-based paint claims by definitions or language within the policy itself. The insurers made no appearance in the underlying action.

[¶6.]     Barker & Little retained counsel at its own expense and a jury trial was set for August 12, 2009. In the midst of this action, Doug Hamilton's business ventures began to experience financial difficulties. By a letter dated August 3,

---

1.     Both insurers are part of the Farmers Insurance Group of Companies. Farmers provided Barker & Little's Commercial General Liability Policy, and Truck provided the Umbrella Policy.

2009, Doug Hamilton informed Farmers that Barker & Little intended on confessing judgment. Farmers was once again invited to intervene and defend the claims. On August 12, Farmers again declined to provide a defense for Barker & Little in the action or to provide coverage for the injuries.

[¶7.] A confessed judgment was approved by the circuit court. The judgment sum of $4,000,070.30 consisted of $1 million for damages owed to H.Q. for her personal injuries, $1 million to each of H.Q.'s parents for their separate personal damages, $1 million for H.Q.'s future medical care and loss of earning capacity, and $70.30 for filing and court costs. Farmers and Truck did not formally object to the judgment, otherwise seek to vacate or modify the judgment, or seek to intervene.

[¶8.] Quinn asserted standing under SDCL 58-23-1[2] to bring all claims that otherwise could have been brought by Barker & Little. Quinn brought an action for execution upon the insurance contract against Farmers and Truck on June 1, 2011. Quinn sought both a declaration that Farmers and Truck had a duty to defend and indemnify Barker & Little in the action, and a judgment against Farmers and

2. SDCL 58-23-1 provides:

> All liability insurance policies issued in this state shall provide in substance that if an execution upon any final judgment in an action brought by the injured or by another person claiming, by, through, or under the injured, is returned unsatisfied, then an action may be maintained by the injured, or by such other person against the insurer under the terms of the policy for the amount of any judgment recovered in such action, not exceeding the amount of the policy, and every such policy shall be construed to so provide, anything in such policy to the contrary notwithstanding.

Truck for an amount equal to Quinn's judgment against Barker & Little. Farmers and Truck served their answer and counterclaim for declaratory judgment on August 1, 2011. On December 7, 2012, Farmers and Truck moved for summary judgment on the basis of exclusions in the applicable policies. Both parties filed the appropriate affidavits and statements of disputed and undisputed facts.

[¶9.]     After discovery, a hearing on the motion was held on December 21, 2012. At the hearing, counsel for Farmers and Truck requested a continuation on the motion in order to submit a correct copy of the General Commercial Liability Policy. Farmers explained that the version submitted to the court with the accompanying affidavit on December 18, 2012 (December 18 Affidavit Policy) did not include the Lead Poisoning and Contamination clause. Counsel for Farmers apologized at the hearing, explaining that "it's a long tangled web" and that there was "obvious confusion" with his client.

[¶10.]     Quinn objected to allowing Farmers and Truck more time to submit another version of the policy, arguing that various inconsistent versions of the policy had already been submitted to counsel and the court. The court allowed Farmers and Truck until February 1 to provide another copy of the insurance policy and scheduled another hearing on the motion for February 20, 2013.[3]

[¶11.]     The court issued an opinion letter on March 26, 2013, granting Farmers and Truck's motion for summary judgment. The letter opinion explained that Quinn's allegations in the underlying suit fell squarely within the Lead Poisoning and Contamination Exclusion of the General Commercial Liability Policy,

3.     This hearing was held telephonically and not transcribed.

-4-

as well as the Punitive or Exemplary Damages Exclusion Endorsement of the same policy. Accordingly, the court held as a matter of law that Farmers had no duty to defend or indemnify Barker & Little in the underlying action. The court stated that it need not determine the applicability of the Total Pollution Exclusion, because the action fell squarely within the language of the Lead Poisoning and Contamination Exclusion.

[¶12.] Quinn appeals, arguing that the circuit court erred in granting summary judgment, because Farmers failed to carry its burden of proving there were no genuine issues of material fact and that Farmers was entitled to judgment as a matter of law. We reverse and remand.

## Standard of Review

[¶13.] Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." SDCL 15-6-56(c). Accordingly, this Court affirms a grant of summary judgment only if "there are no genuine issues of material fact and the legal questions have been correctly decided." *Fix v. First State Bank of Roscoe*, 2011 S.D. 80, ¶ 18, 807 N.W.2d 612, 618 (citation omitted).

## Analysis

[¶14.]   1.   *Whether the circuit court erred by granting Appellee's motion for summary judgment.*

[¶15.] To make its summary judgment determination, the circuit court analyzed specific language from "the General Commercial Liability Policy" and its "attached exclusions," including a specific "Lead Poisoning and Contamination

Exclusion." Based on specific language from this document, the circuit court held that the insurance contract clearly and unambiguously reflected the parties' intention to exclude lead poisoning and punitive damages claims from coverage. Because Quinn's complaint fell squarely within these exclusions, the court held that Farmers, as a matter of law, had no duty to defend or indemnify. Accordingly, the circuit court granted summary judgment for Farmers. On appeal, Quinn asserts that summary judgment based only on the final, unverified version of the alleged insurance contract inappropriately foreclosed a genuine issue of material fact as to the actual language used by the parties to the insurance agreement. We agree.

[¶16.]     The central issue in this case was the scope of coverage of the general commercial liability and umbrella policies issued to Barker & Little. "The scope of coverage of an insurance policy is determined from the contractual intent and the objectives of the parties *as expressed in the contract*." *Cole v. Wellmark of S.D., Inc.*, 2009 S.D. 108, ¶ 14, 776 N.W.2d 240, 246 (emphasis added) (quoting *St. Paul Fire and Marine Ins. Co. v. Schilling,* 520 N.W.2d 884, 887 (S.D. 1994)). As with other contracts, there must be a meeting of the minds on all essential terms, which we determine by "looking at the words and conduct of the parties." *Jacobson v. Gulbransen*, 2001 S.D. 33, ¶ 22, 623 N.W.2d 84, 90 (citation omitted). "[T]o find the intentions of the parties, we rely on the contract language they actually used." *Prunty Constr., Inc. v. City of Canistota*, 2004 S.D. 78, ¶ 16, 682 N.W.2d 749, 756 (quoting *Carstensen Contracting, Inc. v. Mid-Dakota Rural Water Sys., Inc.,* 2002 S.D. 136, ¶ 8, 653 N.W.2d 875, 877).

[¶17.]     Despite the circuit court's reliance on "*the* General Commercial Liability Policy," there was never one document stipulated to by both parties as the true insurance policy in effect.  During the course of this litigation, Farmers submitted several documents to the court and opposing counsel, each of which Farmers or Farmers' counsel attested to as "exact duplications" or "true and correct" copies of the General Commercial Liability Policy provided to Barker & Little.[4] These documents were not identical.  Quinn points out that each version varied in what forms and documents were attached or included, what coverage was provided, and what premiums were charged.  The circuit court apparently resolved this inconsistency in the evidence by accepting the final version of the policy submitted to the court as a true reflection of what was provided to Barker & Little as "*the* insurance policy".[5]  The circuit court did not indicate why that specific version should be relied on above any other.

[¶18.]     The parties to this appeal did not agree on what coverage was intended by the insurance contract between Barker & Little and Farmers.  Farmers argued that it was entitled to summary judgment because the parties' intent, as reflected

4.     The first document was accompanied by an affidavit from Mark Hamilton, one of the custodians of record for Farmers and Truck.  It was submitted to the court on September 25, 2012.  The second document was submitted with an affidavit by counsel on December 18, 2012 (December 18 Affidavit Policy).  The third was submitted again with an affidavit by counsel on January 30, 2013 (January 30 Affidavit Policy).  Additionally, the record includes portions of another version, supplied by Barker & Little in the underlying action.

5.     The circuit court only refers to "the Commercial General Liability Policy" without actually indicating which version of the policy it was relying upon.  The parties seem to agree that the court relied on the January 30 Affidavit Policy, submitted and sworn to by Farmers' counsel, Michael Tobin.

by the January 30 Affidavit Policy, was to exclude coverage for lead poisoning. However, this was not the only alleged memorialization of the parties' intent before the court. The circuit court appears to have rejected the earlier versions of the policy submitted to the court and determined the intent of the parties based on the January 30 Affidavit Policy. The court seemingly determined this version was the true and correct version of the policy in effect. Because this process required the circuit court to resolve the material factual dispute as to the actual language used by the parties, the issue was not suitable for summary judgment.[6]

[¶19.] Farmers argues on appeal that Quinn waived any argument regarding the existence of a genuine issue of material fact because Quinn failed to raise this issue below. Specifically, Farmers argues that if Quinn wanted to challenge the circuit court's use of the January 30 Affidavit Policy, Quinn should have produced evidence that it was not the policy in effect during the relevant time period. Alternatively, Farmers argues that Quinn should have prevented the court from relying on that document by moving to strike it from evidence. By failing to take these steps, Farmers argues that Quinn waived any argument as to the existence of a material issue of fact. Farmers' arguments are unconvincing.

---

6.      As a Connecticut court stated, "The court cannot analyze what was meant by the contract if it cannot determine from the evidence submitted what the language of the contract was." *Bralite Holdings, LLC v. Dryfoos Envtl. Consulting, LLC*, No. HHDCV116022797S, 2012 WL 3869415, at *3 (Conn. Super. Ct. Aug. 7, 2012) (citation omitted). "[A]bsent definitive contract language, the determination of what the parties intended by their contractual commitments cannot be decided as a matter of law on a motion for summary judgment." *Id.* (citation omitted).

[¶20.]     To survive summary judgment, the nonmoving party "must present specific facts showing that a genuine, material issue for trial exists." *Velocity Invs., LLC v. Dybvig Installations, Inc.*, 2013 S.D. 41, ¶ 10, 833 N.W.2d 41, 44 (citation omitted). "[T]he party challenging summary judgment must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Stern Oil Co. v. Brown*, 2012 S.D. 56, ¶ 8, 817 N.W.2d 395, 398 (citation omitted). Quinn resisted summary judgment by arguing that there was a genuine dispute of material fact surrounding what the parties understood and intended for the insurance policy to cover. Quinn supported this argument by pointing to the inconsistencies in the varying documents Farmers submitted as "the insurance policy."[7] Quinn argued that it depended on "what affidavit we're looking at, what was submitted, and when was it submitted" whether certain exclusions were attached to the policy at all. Quinn offered further support by presenting correspondence from Farmers' agent outlining other exclusions applicable to the policy, but failing to mention any lead poisoning exclusion. Quinn also presented statements from Farmers showing confusion by Farmers as to what exclusions were actually included in the insurance policy issued to Barker & Little.[8] These facts supported a finding, beyond mere

---

7.     Farmers seems to argue that Quinn's only objection to the court relying on this final version was because the document was unverified. However, Quinn objected to the court allowing Farmers time to submit this last version of the insurance policy, not simply because it was unverified, but because of the inconsistencies present in the various "exact copies" already submitted.

8.     Quinn contends that Doug Hamilton could not be located to be deposed as to his knowledge of the lead poisoning exclusion.

speculation and conjecture, that the parties may not have had a meeting of the minds about the lead poisoning exclusion.

[¶21.] Furthermore, Quinn was not required to move to strike the January 30 Affidavit Policy in order to argue on appeal that the circuit court's reliance upon it was misplaced. It is well settled that the court on a motion for summary judgment is to view all the evidence in the case in the light most favorable to the nonmoving party. *Rumpza v. Larsen,* 1996 S.D. 87, ¶ 9, 551 N.W.2d 810, 812. *See also* SDCL 15-6-56(c). The nonmoving party need not move to strike all evidence favorable to the moving party in order to get the benefit of this rule.

[¶22.] The January 30 Affidavit Policy relied on by the court in granting summary judgment was in conflict with other versions of the policy submitted to the court. Applying the appropriate standard, the circuit court should have viewed the different versions of the policy in a light most favorable to Quinn, the nonmoving party. Had the circuit court done so, it would not have relied on specific language from the Lead Poisoning and Contamination Exclusion clause, because that language was not present in every version of the policy before the court.

[¶23.] A review of the record leaves significant doubt as to the actual content of the insurance policy provided to Barker & Little. Even on appeal, Farmers' brief to this Court directs the Court to look at both the December 18 Affidavit Policy and the January 30 Affidavit Policy in order to understand the insurance policy in effect at the relevant time. Yet, each of these documents was separately submitted to the court as a true copy of the insurance policy in effect. As asserted by Quinn, the conflicting evidence of the actual language used by the parties to the insurance

agreement creates in this case a material question of fact. Accordingly, Farmers failed to carry its burden of proving it was entitled summary judgment and the circuit court erred in granting summary judgment.

## Conclusion

[¶24.]     The circuit court erred by granting summary judgment in this case. Without resolving the factual inquiry as to which version of the policy before the court accurately reflected the intent of the parties, the court could not determine as a matter of law that the lead poisoning claim was excluded from coverage. It was inappropriate for the circuit court to resolve this factual inquiry on motion for summary judgment. Accordingly, we reverse and remand for proceedings consistent with this opinion.

[¶25.]     KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.