#26831-a-DG

**2014 S.D. 97**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

THE MORRIS FAMILY LLC,
through its members; Carol Morris,
Alan Morris, Kathleen Morrison
and Ginny Yadegar,                                  Plaintiffs and Appellants,

        v.

SOUTH DAKOTA DEPARTMENT
OF TRANSPORTATION, THE
STATE OF SOUTH DAKOTA,                              Defendant and Appellee,

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBERT L. TIMM
Judge

\* \* \* \*

MARK V. MEIERHENRY
CLINT SARGENT
CHRISTOPHER HEALY of
Meierhenry & Sargent, LLP
Sioux Falls, South Dakota                           Attorneys for plaintiffs
                                                    and appellants.


RANDY S. BINGNER
KARLA ENGEL
Special Assistant Attorneys General
South Dakota Department of Transportation
Pierre, South Dakota                                Attorneys for defendant
                                                    and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS ON
AUGUST 25, 2014
OPINION FILED **12/23/14**

GILBERTSON, Chief Justice

[¶1.]        The Morris Family LLC (Morris Family) initiated an action against the State of South Dakota and the City of Watertown, claiming unconstitutional taking or damaging of property for loss of access from their property to Highway 212, and violation of due process stemming from the State's and City's actions denying access.  The State moved for summary judgment, asserting that the State was granted complete control of access for the land in question in a 1970 judgment.  The circuit court granted summary judgment and dismissed the complaint.  Morris Family appeals, claiming that it was not given proper notice that summary judgment on the due process issue was before the court and that the court erred in granting summary judgment.  Specifically, Morris Family asserts there were genuine questions of material fact regarding whether the State was granted control of access as part of the 1970 condemnation action.  We affirm.

**Facts and Procedural History**

[¶2.]        Morris Family owns certain property abutting U.S. Highway 212 in Watertown, South Dakota.  In 1969, a state highway project sought to turn Highway 212 into a four-lane, controlled-access highway to serve as the primary entrance to the City of Watertown from Interstate 29.  To carry out the plan of establishing this controlled-access highway, the State commenced a condemnation action against the plaintiff's predecessor in title.  Through this condemnation action, the State sought to acquire the necessary "right of way and rights of access" in accordance with the project plans and specifications.

[¶3.] Prior to the condemnation action, the driveway to the residence and farm buildings on Morris Family's property provided direct access to Highway 212. As part of the condemnation action, the driveway was moved to connect with a break in the control of access along the western edge of the property. This break in control of access was 24-feet wide and shared with the neighboring Endres property. The record reflects that the defendants to the condemnation action admitted that the State had the right to take the property under its right of eminent domain but contested the compensation to be paid, alleging "[t]hat the Plaintiff has failed to offer just compensation for that property taken from these Defendants and for deprivation of access to and from said property and the adjacent highway."

[¶4.] The parties to the 1970 condemnation action eventually signed a Stipulation for Settlement and for Entry of Judgment compromising and settling the condemnation action for $6,000 and further agreeing "that of the $6,000, $1,440 is for the land and $4,560 is for severance damages." A judgment in the condemnation action in March 1970 granted the State "the right to control access to the right of way in accordance with Chapter 31-8 of the 1967 South Dakota Compiled Laws and amendments thereto" on the Morris Family land at issue in this case. The judgment delineated $6,000 in damages, stating that "$1,440 is designated as payment for the land taken and $4,560 is designated as damages to the remainder."[1] The judgment was never appealed.

---

1. A special assistant attorney general for the State of South Dakota recommended this amount—an increase from the State's original estimate— in a letter addressed to the Chief Right of Way Agent. That letter stated, in

(continued . . .)

[¶5.] In December 2010, Morris Family filed a three-count complaint against the City of Watertown and the State. Count One alleged "Error in Judgment," asserting that Morris Family retained "full access rights to State Highway 212" because the condemnation action never eliminated those rights. Count One also alleged that the words "in accordance with Chapter 31-8" in the judgment were an error that should be amended to read "in accordance with Chapter 31-19." Count Two of the Complaint was for "Constitutional Taking or Damage." It alleged that Morris Family was not compensated for the loss of total access to State Highway 212, and that "Plaintiffs [sic] highest and best use of their property has been destroyed by the failure of either the City or the State to grant it access to State Highway 212 upon a change in use of the property." Count Three alleged "Failure to Provide Due Process." It alleged that the State had taken all access without granting a hearing or any other method to contest the exercise of the State's alleged police power in denying all commercial access to the highway. It also alleged that the failure to have a procedure "whereby a landowner can petition to alter the declarations of the engineers and the Department of Transportation is a violation of the rights of due process under both the State and Federal constitution."

[¶6.] In July 2011, Morris Family filed a "Motion to Correct Judgment under SDCL 15-6-16(a)," alleging that the State intended only to gain an ordinary right-of-way in the 1970 condemnation action and never bargained for complete control of

_____

(. . . continued)
part, "Although the taking was quite small, it was frontage on Highway 212 which offered attractive commercial or subdivision possibilities."

access under SDCL chapter 31-8. The circuit court denied the motion[2] and, in a September 2011 letter decision, stated:

> There is little support to the Plaintiff's theory that a clerical error was made by Judge H.O. Lund when entering the Judgment on March 26, 1970, vesting the State of South Dakota with ". . . all right to control access to the right-of-way . . ." of the Morris land described therein. Documents from the broader project file unequivocally evidence the State's intent to acquire the right to control access along Highway 212 as it reached eastward from Watertown to connect with the interstate.

[¶7.] In May 2012, Morris Family filed an Application for Highway Access Permit with the Watertown Area Engineer. The application sought a 40-foot wide access in a different location than the existing break in control of access. The stated purpose of the request was to "[r]elocate existing access and change in use" to commercial access. In response, the Engineer sent Morris Family an Application for Relinquishment of Access Control. He explained, "This is an area where the state has control of access. Because of this we need you to fill out an application for relinquishment of access control form. The access application is put on 'hold' until the relinquishment is addressed." In exchange for the Endres giving up their right to use the Endres/Morris Family shared access, the Endres property was subsequently granted a relinquishment of access control at another location along Highway 212.

[¶8.] In December 2012, an attorney representing Morris Family filed an Application for Relinquishment of Access Control. This application requested a new 60-foot wide break in access, located 238 feet from the west property line.

---

2. The denial of this motion has not been appealed to this Court.

Alternatively, it requested expanding the current 12-foot break at the west edge of the Morris Family property to create a 60-foot wide break in access control. The State denied the request by mail on February 26, 2013.

[¶9.] In August 2013, the State filed a motion for summary judgment "on the grounds there are no genuine issues of material fact and the State is entitled to judgment as a matter of law." The State asserted that its basis for summary judgment was that the State owned the right to control of access under SDCL chapter 31-8 across the property, except for the designated break at the west property line, where Morris Family had been using the 24-foot shared access. The State asserted that the 24-foot access was the same as what existed immediately following the 1970 condemnation action and that the only locations where Morris Family applied for a break in the control of access were locations where the State owned control of access pursuant to the judgment in the 1970 action. The State also asserted that Morris Family had therefore suffered no loss of any property right and "suffered no damage by the State's denial of a break in control of access, or otherwise." After a hearing on the motion, the circuit court granted the State's motion for summary judgment and dismissed the complaint.

[¶10.] Morris Family appeals, alleging that the circuit court should not have granted summary judgment on the due process claim because it was not properly before the court. Additionally, it argues that summary judgment was not appropriate because genuine issues of material fact existed as to whether the State owned control of access to the land in question.

## STANDARD OF REVIEW

[¶11.] Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quinn v. Farmers Ins. Exch.*, 2014 S.D. 14, ¶ 13, 844 N.W.2d 619, 623 (quoting SDCL 15-6-56(c)) (internal quotation marks omitted). "Accordingly, this Court affirms a grant of summary judgment only if 'there are no genuine issues of material fact and the legal questions have been correctly decided.'" *Id.* (quoting *Fix v. First State Bank of Roscoe*, 2011 S.D. 80, ¶ 18, 807 N.W.2d 612, 618). "A disputed fact is not 'material' unless it would affect the outcome of the suit under the governing substantive law . . . ." *Gul v. Ctr. for Family Med.*, 2009 S.D. 12, ¶ 8, 762 N.W.2d 629, 633 (quoting *Weitzel v. Sioux Valley Heart Partners*, 2006 S.D. 45, ¶ 17, 714 N.W.2d 884, 891) (internal quotation mark omitted). "When a motion for summary judgment is made and supported as provided in § 15-6-56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in § 15-6-56, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." SDCL 15-6-56(e).

## ANALYSIS AND DECISION

[¶12.] Morris Family first argues that the circuit court erred by granting summary judgment on all issues because Morris Family's claim of a due process violation was not presented to the court for summary judgment, and it was

therefore deprived a reasonable opportunity to respond. *See Schroeder v. City of New York*, 371 U.S. 208, 211, 83 S. Ct. 279, 282, 9 L. Ed. 2d 255 (1962) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). Morris Family asserts that it alleged two distinct causes of action—one claiming it was the victim of inverse condemnation and the other claiming that the State and the City of Watertown conspired to deprive Morris Family of its property rights by denying it due process. It contends that the State's motion for summary judgment only addressed the first cause of action. Accordingly, Morris Family asserts that the court improperly acted on its own accord when it granted summary judgment on the other issues. This argument is unpersuasive for several reasons.

[¶13.]    First, the State's motion for summary judgment was not a motion for partial summary judgment addressing only the inverse condemnation claim. The motion clearly asserted that there were "*no* genuine issues of material fact[,]" not that there were no genuine issues of material fact on the inverse condemnation claim. Thus, the State's motion gave Morris Family notice that the State was challenging any assertion of a genuine issue of material fact.

[¶14.]    Moreover, overlapping issues addressed in the motion for summary judgment eliminated necessary elements of the State's case for both claims. The State's ownership of control of access—the central focus of the motion for summary judgment and the arguments concerning the motion at the hearing—is fatal to both

claims. As discussed further below, this eliminated an element of the takings claim because the State owned control of access, and therefore Morris Family could not prove that it was deprived of a property interest without compensation. Additionally, the State's ownership of control of access eliminated an element of the due process claim. "To establish a procedural due process violation, a plaintiff must demonstrate that he has a protected property or liberty interest at stake and that he was deprived of that interest without due process of law." *Osloond v. Farrier*, 2003 S.D. 28, ¶ 16, 659 N.W.2d 20, 24 (quoting *Hopkins v. Saunders*, 199 F.3d 968, 975 (8th Cir. 1999)) (internal quotation marks omitted). The only claimed property interest was a denial of a right to access. By asserting that the 1970 judgment granted the State the "right to control access" to the property in question, the State removed the element of a property interest necessary for Morris Family to establish a due process claim.

[¶15.] The record reflects that the State's motion for summary judgment was properly served. A hearing was held on the motion, where the parties were given an opportunity to address the property interests at stake, as well as the actions taken by the State to allegedly trigger due process and takings claims. In light of the motion before the court and the hearing in which Morris Family actively participated, we reject Morris Family's contention that it was unfairly surprised by the court granting summary judgment on all claims. We conclude that the motion for summary judgment was properly before the circuit court to rule on all of Morris Family's claims.

[¶16.]	Morris Family also argues that the circuit court erred by granting summary judgment because there were genuine issues of material fact regarding whether the State adequately condemned and compensated access to Highway 212 in 1970. Morris Family contends there is no definitive evidence to prove that the right to commercial access was condemned.  The South Dakota Constitution provides that "[p]rivate property shall not be taken for public use, or damaged, without just compensation . . . ." S.D. Const. art. VI, § 13.  "This Court has previously determined that South Dakota's Constitution provides greater protection for its citizens than the United States Constitution because our Constitution requires that the government compensate a property owner not only when a taking has occurred, but also when private property has been damaged." *Rupert v. City of Rapid City*, 2013 S.D. 13, ¶ 9, 827 N.W.2d 55, 60 (quoting *Krier v. Dell Rapids Twp.*, 2006 S.D. 10, ¶ 21, 709 N.W.2d 841, 846) (internal quotation marks omitted).  "As we have explained, an owner of land abutting on a conventional street or highway has certain private rights in the street or highway distinct from that of the general public." *Hall v. State ex rel. S.D. Dep't of Transp.*, 2006 S.D. 24, ¶ 14, 712 N.W.2d 22, 27-28 (quoting *Hurley v. State*, 82 S.D. 156, 160, 143 N.W.2d 722, 724 (1966)) (internal quotation marks omitted).  "The right of access is one of those private property rights and, therefore, cannot be taken for public use or materially impaired without compensation." *Id.*, 712 N.W.2d at 28.

[¶17.]	"We require those resisting summary judgment [to] show that they will be able to place sufficient evidence in the record at trial to support findings on all the elements on which they have the burden of proof." *Bordeaux v. Shannon Cnty.*

*Sch.*, 2005 S.D. 117, ¶ 14, 707 N.W.2d 123, 127 (alteration in original) (quoting *Chem–Age Indus., Inc. v. Glover*, 2002 S.D. 122, ¶ 18, 652 N.W.2d 756, 765) (internal quotation marks omitted). "SDCL 15-6-56(e) requires the opposing party to be diligent in resisting a motion for summary judgment, and mere general allegations and denials which do not set forth specific facts will not prevent the issuance of a judgment." *Id.* (quoting *Hughes–Johnson Co. v. Dakota Midland Hosp.*, 86 S.D. 361, 364, 195 N.W.2d 519, 521 (1972)) (internal quotation marks omitted). We thus examine whether Morris Family showed it would be able to place sufficient evidence into the record to prove that its right of access was taken without just compensation in 1970.

[¶18.]        Morris Family's main contention is that there is a genuine issue of material fact as to whether the State properly gained control over *commercial* access to the property. However, the 1970 condemnation judgment is dispositive on this issue. It stated that the State was granted "the right to control access to the right of way in accordance with Chapter 31-8 of the 1967 South Dakota Compiled Laws."

[¶19.]        The judgment directly describes the extent to which the State was empowered to control access. The State was granted the power to "control access" with no qualifiers, except that the control had to be "in accordance with Chapter 31-8[.]" At the time of the judgment, SDCL chapter 31-8 gave broad discretion to "regulate, restrict, or prohibit access as to best serve the traffic[.]" SDCL 31-8-5 (1967). This contemplates control over *all* types of access. At the time, it included nearly absolute power to permit or restrict ingress and egress, as well as the power

to place conditions on access once the right to control had been established. *See* SDCL 31-8-6 (1967) ("No person shall have any rights of ingress or egress to, from or across controlled-access facilities to or from abutting lands, except at such designated points at which access may be permitted, upon such terms and conditions as may be specified from time to time."[3]). The statutes also allow the state to work with local governments to develop and implement access control plans, including agreements concerning the use and vacation of controlled access. *See* SDCL 31-8-13.

[¶20.]        Morris Family attempted to change the substance of this judgment by moving to "correct" the judgment. As part of this proposed "correction," Morris Family would have changed "Chapter 31-8" to read "Chapter 31-19"—the general highway condemnation chapter. This portion of statute does not describe the type of complete control over access described in Chapter 31-8. The court denied this attempt. Because the judgment is undisturbed, it carries great weight in this controversy. The State was granted "control of access" and cannot now be decried for exercising that control, especially by preventing new access along portions of the right-of-way which have never been used to access the property since the judgment.

[¶21.]        Morris Family has enjoyed use of the 24-foot shared access since 1970 to reach the Morris' residence, despite the 1970 judgment granting the State

---

3.    The phrase "upon such terms and conditions as may be specified from time to time[,]" coupled with the judgment granting the State power to control access to the entirety of the right-of-way, may have empowered the State to further restrict use of the 24-foot shared access. However, that issue is not before us because the State has taken no action to change Morris Family's use of the 24-foot access.

ownership of all control of access. It thus may appear that Morris Family has some property interest in its continued use of that access. Morris Family attempted to argue that the access was destroyed because the neighbors gave up the right to use the neighbor's half of the access. However, Morris Family has never contended that it has been deprived of continued use of the access for this purpose.

[¶22.] Morris Family also asserts there is a question "not if access remains but to what extent." This is not an element of a takings claim. Instead, Morris Family must prove that its property was damaged or taken in some way. Yet, Morris Family has not pointed to any evidence that the State has altered or impaired Morris Family's continued use of the 24-foot access—the only access in which it even arguably has a property interest.

[¶23.] The only alleged impairment of access rights in this case is the State's denial of Morris Family's requests to expand the 24-ft access point—which would give Morris Family some 48 additional feet of access—or alternatively, the request for a wider access in a completely separate location. Both of these requests would require the State to relinquish control of its property right. Namely, the State would have to relinquish access on land that the State already compensated Morris Family for, as determined by the 1970 judgment. The State addressed this fact in its statement of undisputed material facts, asserting that Morris family had "only applied for an access and a break in control of access at locations where the State owns control of access." Morris family refuted this fact with only a bare assertion that "Plaintiffs have worked for years to work out a resolution with the State of

South Dakota regarding access." Again, Morris Family was unable to show that its right to continued use of the 24-foot access was impaired.[4]

[¶24.] Morris Family's actual argument in this case appears to be more directly stated in its reply brief: "The Morris's [sic] were deprived of any meaningful opportunity to apply for access to highway 212." It claims that this deprivation of access, or the right to apply for access, both peculiarly damaged its property rights and amounted to a violation of due process. This action damaged the rest of Morris Family's property, it asserts, because the action deprived the property of its highest and best use as commercially zoned property. As discussed above, the landowners were compensated for damage arising from loss of access along the entirety of the property; therefore, the takings claim fails with regard to this claimed deprivation.

[¶25.] Morris Family's due process claim also fails because Morris Family is unable to prove it has a protected property interest at stake that would trigger a right to due process. "To have a protected right under due process, persons must possess more than a one-sided expectance. They must have a legal 'entitlement.'" *Bergee v. S.D. Bd. of Pardons & Paroles*, 2000 S.D. 35, ¶ 8, 608 N.W.2d 636, 640. Morris Family claims that process was due—and denied—when Morris Family sought access to Highway 212. It claims a conspiracy between the City and the State denied it a fair opportunity to be heard and prevented appeal of the decision.

---

4.  Although Morris Family asserted that the access was destroyed when the Endres property owners abandoned the right to use the access, this contention is not supported in the record. Rather, the record supports the assertion that the Endres property lost *its own* use of the shared access, not that Morris Family's use of the access was changed or impaired in any way.

To support its argument that this warrants relief, Morris Family asserts that "[f]ederal constitutional law teaches that such a deprivation violates the Federal Due Process Clause, which was incorporated to the states under the 14th Amendment."

[¶26.] Unlike the cases cited by Morris Family to support this argument,[5] Morris Family does not have a "legitimate claim of entitlement" to highway access in this case. As noted above, Morris Family must show that it was deprived of a protected property or liberty interest without due process. *Daily v. City of Sioux Falls*, 2011 S.D. 48, ¶ 14, 802 N.W.2d 905, 911. However, the United States Supreme Court has "never held that applicants for benefits, as distinct from those already receiving them, have a legitimate claim of entitlement protected by the Due Process Clause of the Fifth or Fourteenth Amendment." *Lyng v. Payne*, 476 U.S. 926, 942, 106 S. Ct. 2333, 2343, 90 L. Ed. 2d 921 (1986). Here, Morris Family seeks to gain back highway access, not as a matter of legitimate entitlement, but as a free benefit to its property. In essence, Morris Family would gain back for free what the State paid for in 1970.

[¶27.] The United States Supreme Court has recognized "that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756, 125 S. Ct.

---

5. Morris Family cites to *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S. Ct. 1554, 56 L. Ed. 2d 30 (1978). In *Memphis, Light, Gas & Water*, the United States Supreme Court specifically noted that electric customers had a "'legitimate claim of entitlement' [to continued utility service] within the protection of the Due Process Clause." 436 U.S. at 12, 98 S. Ct. at 1561. Therefore process was due when the utilities were terminated. *Id.*

2796, 2803, 162 L. Ed. 2d 658 (2005). In this case, the State officials have full discretion to grant or deny requests for relinquishment of access control. Morris Family has not directed our attention to any statute or other independent source giving it legitimate claim to entitlement to the access, therefore no process is due when its request for access is denied. *See Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972) ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.").

[¶28.] The record reveals that Morris Family failed to identify a property interest damaged or taken to support its takings claim. It was likewise unable to identify a property or liberty interest needed to support a procedural due process claim. Accordingly, Morris Family has failed to meet its burden of showing "that [it] will be able to place sufficient evidence in the record at trial to support findings on all the elements on which [it has] the burden of proof." *Bordeaux,* 2005 S.D. 117, ¶ 14, 707 N.W.2d at 127 (quoting *Chem–Age Indus., Inc.*, 2002 S.D. 122, ¶ 18, 652 N.W.2d at 765) (internal quotation marks omitted). We therefore conclude that the circuit court did not err when it granted summary judgment on all claims and dismissed the case.

## CONCLUSION

[¶29.]     For the above stated reasons, we conclude that the motion for summary judgment was properly before the circuit court, and the circuit court did not err when it granted summary judgment on all issues.  We affirm.

[¶30.]     KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.