#27176, #27181-rev & rem-JMK & DG
**2016 S.D. 89**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,
by and through the Department
of Transportation and the South Dakota
Transportation Commission,                     Plaintiffs and Appellees,

v.

JB ENTERPRISES, INC.,                          Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE SUSAN M. SABERS
Judge

\* \* \* \*

KARLA L. ENGLE
Special Assistant Attorney General
Department of Transportation
 Office of Legal Counsel
Pierre, South Dakota                           Attorneys for plaintiffs
                                               and appellees.


MARK V. MEIERHENRY
CLINT SARGENT
CHRISTOPHER HEALY of
Meierhenry Sargent, LLP
Sioux Falls, South Dakota                      Attorneys for defendant
                                               and appellant.

\* \* \* \*

                                               ARGUED ON MAY 27, 2015
                                               OPINION FILED **12/07/16**

KERN, Justice, and GILBERTSON, Chief Justice

[¶1.]        **Justice Kern delivers the opinion of the Court on Issue One (raised by the State on notice of review) and Issue Two.  Chief Justice Gilbertson delivers the opinion of the Court on Issue Three.**

[¶2.]        **KERN, Justice, writing for the Court on Issue One and Issue Two.**

[¶3.]        The State reconstructed the interchange at Interstate 90 and Highway 115 (Cliff Avenue) in Sioux Falls.  Prior to initiating the public improvement, the State instituted a quick-take condemnation action under SDCL chapter 31-19 against the landowner, JB Enterprises, Inc. (JBE), contesting JBE's "control of access" to its property.  JBE's property is located on a corner lot abutting Cliff Avenue and 63rd Street.  The State ultimately changed the public improvement and left intact JBE's curb cut along Cliff Avenue.  The State closed the intersection of 63rd Street and Cliff Avenue and constructed a median in Cliff Avenue and a right-turn lane in an existing right of way.  JBE requested a jury trial on damages.  The State moved for summary judgment, asserting that no compensable taking occurred because the State did not physically take any of JBE's property and did not eliminate JBE's direct access to Cliff Avenue.  After a hearing, the circuit court granted the State summary judgment.  It found no material fact in dispute and ruled that the State's public improvement did not result in a compensable taking or damaging of JBE's private property.  JBE appeals.  We reverse and remand for a trial on damages.

## BACKGROUND

[¶4.] In 2012, the State planned to reconstruct part of the South Dakota state trunk highway system pursuant to a federal aid project. Particular to this appeal is the State's reconstruction of the interchange between Interstate 90 and Cliff Avenue in Sioux Falls, South Dakota. Near this interchange is a Perkins Restaurant, located on Lot 19, owned and operated by JBE. JBE also owns the western 115.5 feet of Lot 18. Kelly Inns Ltd. previously owned the remaining land in Lot 18. The State purchased this land from Kelly Inns for this public improvement. Lot 19 is located on a corner lot. The western border of Lot 19 abuts a highway—Cliff Avenue. The northern border of Lot 19 abuts a gravel road—63rd Street. Lot 18 abuts 63rd Street. Cliff Avenue and 63rd Street intersect at the corner of Lot 19 (the Intersection). Ingress to and egress from Lots 19 and 18 (the Property) existed via a curb cut along Cliff Avenue to the Property's frontage and an entrance along 63rd Street to the Property's rear parking lot.

[¶5.] To accomplish its public improvement, the South Dakota Transportation Commission adopted resolutions on April 10 and 26, 2012. The first resolution declared it necessary for the Department of Transportation (DOT) to condemn:

> Description of the control of access of that portion of Project No. IM 0909(80)397 which lies within Lot 19, except the West 42 feet of said Lot 19, of North Side Gardens, in the SW1/4 of Section 27, Township 102 North, Range 49 West of the 5th P.M., Minnehaha County, South Dakota.

The resolution also declared it necessary to "obtain said slope easement by condemnation, which said slope easement shall be a temporary construction

easement." An amended resolution added that the State deemed it necessary to take:

> Description of the control of access of that portion of Project No. IM 0909(80)397 which lies within the West 115.5 feet of Lot 18 and all of Lot 19, except the West 42 feet of said Lot 19, of North Side Gardens in the SW1/2 SW1/4 of Section 27, Township 102 North, Range 49 West of the 5th P.M., Minnehaha County, South Dakota.

[¶6.] After adopting the resolutions, the State instituted a quick-take condemnation action against JBE under SDCL chapter 31-19. On May 2, 2012, the State filed a summons, petition, and declaration of taking pursuant to SDCL 31-19-3 and SDCL 31-19-23. The petition indicated that the Transportation Commission, by resolution, deemed it necessary to acquire all land needed "as is more fully shown by the Resolution of said Commission" adopted on April 10, 2012, and the Resolution adopted on April 26, 2012. The petition further requested that a "judgment be rendered against [JBE] condemning the land described in this said Petition for right of way, control of access, and temporary easement" and "[t]hat a jury be called and impaneled to try the issue and determine the amount of just compensation and damages that [JBE is] entitled to receive by reason of such taking and damaging."

[¶7.] In accordance with SDCL 31-19-23, the declaration of taking included: (1) the DOT's authority to take the Property, (2) the description of the lands taken, (3) a statement of the interest in the lands taken and the name of the owner, (4) a statement of the sum of money the State estimated would be just compensation for the land taken and damaged, (5) a statement that there existed no prior written memoranda or agreements and that the right of way plans were contained in an

exhibit, and (6) a detailed appraisal. Based on an appraisal assessing JBE's loss caused by the public improvement, the State deposited $1,120,580 cash with the Minnehaha County Clerk of Courts.

[¶8.] On May 15, 2012, JBE moved the circuit court to release the court deposit and requested that the court set a hearing on the motion for May 30, 2012. The court did not hold a hearing because counsel for JBE informed the court that the State and the federal highway authorities were "discussing changes that may affect the scope of the taking in this case." On June 12, 2012, JBE filed a "Waiver of Right to Contest Taking" under SDCL 21-35-10.1. Although JBE did not contest the taking, it continued to negotiate with the State in an effort to change the public improvement plan so that JBE would retain the ability to access the Property via Cliff Avenue. The State informed counsel that federal authorities "seemed willing to consider forgoing the need to acquire control of access across the Perkins property and allow the current entrance to remain in place. There is a very real chance that we won't need any easements or access rights at all from your clients." In response, counsel for JBE wrote, "It will reduce the damage to the property but by how much remains to be seen. We will wait another week and then expect to waive the hearing and begin the case." On June 19, 2012, the State informed counsel that federal authorities approved the proposed plan changes. Counsel for JBE acknowledged that the taking of the Property would be reduced, but stated, "I doubt that the damage to my client's property is eliminated[;] perhaps in gravity but not entirely."

[¶9.]    On July 17, 2012, the State sent JBE the revised plans and noted that the State would not take "any easement or access rights across the Property's frontage" along Cliff Avenue. The State also drafted a stipulation and order of dismissal of the condemnation action. The State alleged that the "DOT is no longer affecting the access point or taking a temporary easement." In regard to the closing of the Intersection, the State remarked, "[Y]ou appear to be making that claim in the separate case involving the vacant Miller and Walsh parcels that abut the I-90 ramp. Continuing the separate Perkins case appears to be a redundancy." JBE declined to stipulate for a dismissal. It proceeded with discovery related to the loss JBE believed it suffered by the State's taking.

[¶10.]    On November 30, 2012, the State moved to amend its petition to include the revised construction plans. The State requested a ruling on "whether construction of the project in accordance with the revised plans will affect a compensable taking or damaging of [JBE's] property." In December 2012, the State again revised the construction plans. It submitted an amended motion for leave to file an amended petition. At a hearing on the State's motion in February 2013, JBE did not object to the State's amended petition. The court entered an order allowing the State to amend its condemnation petition.

[¶11.]    During the 2013 construction season, the State substantially completed the public improvement. The State did not use a temporary easement on the Property and did not extinguish the Property's access to Lot 19 via Cliff Avenue or Lot 18 via 63rd Street. The State did, however, close the Intersection. The State also constructed a median in Cliff Avenue (which prevents left turns along Cliff

Avenue into the Property) and expanded a right-turn lane in the State's existing right of way abutting the Property's frontage.

[¶12.] In February 2014, JBE filed a motion with the circuit court to declare the date of taking relating to the State's "taking of all access" to the Property. JBE alleged that because of the quick-take procedure, the State owns JBE's right to "control of access" to the Property. In response, the State moved for summary judgment, explaining its view of the impact of the public improvement upon JBE. Specifically, the State noted that before and after the public improvement, JBE had one curb cut along the Cliff Avenue frontage and an access approach along 63rd Street. It also noted that the construction of the median in Cliff Avenue prevents left turns into or out of JBE's property at its curb cut. The State further indicated that it "constructed a right turn lane in an existing 42-foot-wide right-of-way abutting the Property." The State also noted that it closed the Intersection after it built an extension to 63rd Street, connecting it with another segment of 63rd Street to the east. The extension, the State explained, caused 63rd Street to intersect with National Avenue, which runs through an industrial park and intersects with East 60th Street, a major thoroughfare.

[¶13.] After describing the impact of the public improvement upon JBE, the State claimed "that DOT has not taken or damaged any compensable property interest of [JBE]." The State further submitted that JBE agreed, through e-mail and written correspondence, to allow the State to exclude the Property from the declaration of taking when it did not object to the State's request to amend its

condemnation petition. The State also asserted that even if the public improvement caused damage to JBE's property interest, the loss was not compensable.

[¶14.]    In response to the State's motion for summary judgment, JBE argued that it did not waive its right to compensation when, as a professional courtesy, it did not object to the State's motion to amend its petition. JBE included letters sent to the State reflecting the State's and JBE's negotiations to minimize the effects of the project. In one letter, JBE emphasized that the State's taking resulted "in significant loss in the fair market value of the Perkins property. The actions are the reduction or loss of visibility, access, closing [of] 63d Street, loss of Kelly Inn project, and other changes to the street that reduces the fair market value of the property by a staggering amount."

[¶15.]    JBE also argued that when the State filed its declaration of taking under the quick-take statutes, the State condemned the property interest described in the declaration, and JBE's right to just compensation vested. JBE directed the circuit court to *State Department of Transportation v. Richey Motor Co.*, for the proposition that the State cannot abandon its condemnation action under SDCL chapter 31-19 and deprive a landowner of the right to seek compensation. *See* 270 N.W.2d 48 (S.D. 1978). To prove its right to have a jury determine just compensation, JBE submitted the appraisal report prepared by the State's expert. That report detailed the before and after fair market value of the Property as a result of the State's public improvement. JBE submitted an affidavit establishing, among other things, the basis for its claim that the expansion of the turn lane in the State's existing right of way damaged JBE's property interest.

[¶16.]        After a hearing on both motions, the circuit court issued an incorporated memorandum decision.  The court found that the declaration of taking triggered the State's quick-take condemnation proceedings under chapter 31-19.  The court ruled that the property specified in the declaration of taking was deemed "condemned and taken for the use of the State" and that JBE's right to just compensation vested when it filed its waiver of the right to contest the taking on June 12, 2012.  *See* SDCL 31-19-24.  The circuit court held that JBE did not waive its right to seek just compensation because of any informal or formal communications with the State or because of its failure to object to the State's motion to amend its condemnation petition.  The court further ruled that chapter 31-19 permitted the State to alter its construction plans and that JBE was only entitled to "just compensation based upon the *actual situation*" existing at the conclusion of the public improvement.  *See Richey*, 270 N.W.2d at 51 (emphasis added).

[¶17.]        The court addressed the issue of just compensation.  The court separated the public improvement into three "actions."  In regard to each action, the court identified the State's argument and JBE's response.  These actions include: (1) the installation of the median in Cliff Avenue, (2) the construction of a right-turn lane in the State's existing highway right of way, and (3) the closure of the Intersection.

[¶18.]        The court granted the State summary judgment, ruling that "[t]he undisputed material facts demonstrate that there has been no compensable taking or damaging of [JBE's] private property[.]"  JBE appeals and raises two issues:

"Does the Declaration of Taking Act also known as 'Quick-Take Condemnation' permit the State to abandon the taking of the right to control access after a Declaration of Taking?," and, "If the [t]rial [c]ourt was correct by permitting the abandonment of a 'quick-take,' was summary judgment appropriate?" By notice of review, the State claims that the parties agreed "to eliminate the taking of a temporary easement and access control" over JBE's private property. We address the State's notice of review as Issue One and then address JBE's issues as Issue Two and Issue Three.

## STANDARD OF REVIEW

[¶19.]     We review "a grant of summary judgment 'to determine whether the moving party has demonstrated the absence of any genuine issue of material fact and entitlement to judgment on the merits as a matter of law.'" *Tolle v. Lev*, 2011 S.D. 65, ¶ 11, 804 N.W.2d 440, 444 (quoting *Johnson v. Sellers*, 2011 S.D. 24, ¶ 11, 798 N.W.2d 690, 694). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." SDCL 15-6-56(c).

## ANALYSIS

### 1.     Did the parties agree to eliminate the taking?

[¶20.]     By notice of review, the State contends that there was no actual taking because JBE "agreed to the plan changes and the amended pleadings" and "took a series of steps to facilitate the elimination of the taking." The State directs this

Court to SDCL 31-19-37, which permits the State to work with landowners to reduce or eliminate a proposed taking under the quick-take statutes. SDCL 31-19-37 provides:

> In any condemnation proceeding instituted by or on behalf of the State of South Dakota, the attorney general may stipulate or agree upon behalf of the State of South Dakota to exclude any property or part thereof, or any interest therein, that may have been, or may be, taken by or on behalf of the State of South Dakota by declaration of taking or otherwise. In the case of a municipality, the municipality's attorney or other duly authorized representative may take the action provided in this section.

JBE acknowledged a change in the scope of the public improvement from what the State originally proposed in the declaration of taking. But the record reveals that JBE never wavered from its position that the State's public improvement caused a compensable loss to the Property. And, JBE refused to sign the proposed stipulation offered by the State. The informal agreement between the State and JBE allowing the State to amend the pleadings to reflect the changes in the State's reconstruction plan did not constitute an agreement under SDCL 31-19-37 by the attorney general "to exclude any property or part thereof, or any interest therein, that may have been, or may be, taken by or on behalf of the State of South Dakota by declaration of taking or otherwise."

### 2. Did the circuit court allow the State to "abandon the taking of the right to control access after a Declaration of Taking"?

[¶21.] JBE submits that it is entitled to compensation for the impairment of the property interests the State identified in its declaration of taking. It argues that the State now owns the right to control JBE's access to the Property and "can

cut off all access . . . at any moment." During oral argument, the State claimed that by amending its petition, the State eliminated any actual taking of JBE's property. It also asserted that it no longer holds title to the property interests described in the declaration of taking. We disagree. The State instituted this quick-take action and, as a result, currently holds title to JBE's property interests described in the declaration of taking. This includes JBE's "control of access" and, in some respect, the property interest described as the slope easement. *See* SDCL 31-19-24 (title to the property interest described in the declaration of taking vested in the State). To conclude otherwise would allow the State to abandon the taking in violation of SDCL 31-19-35 (prohibition against abandoning condemnation proceeding). The circuit court erred when it allowed the State to abandon the condemnation proceeding.

[¶22.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur on Issue One and Issue Two.

[¶23.] **GILBERTSON, Chief Justice, writing for the Court on Issue Three.**

### 3. Did the State's declaration of taking preclude summary judgment in favor of the State?

[¶24.] South Dakota's constitution requires that "[p]rivate property shall not be taken for public use, or damaged, without just compensation[.]" S.D. Const. art. VI, § 13. This provision contemplates compensation only when the State infringes a recognized property right. *Darnall v. State*, 79 S.D. 59, 70, 108 N.W.2d 201, 207 (1961). We have long held that "the owner of land [has a special, private right] to access [his] land . . . where it abuts upon a highway." *Hyde v. Minn., Dak.*

*& Pac. Ry. Co.*, 29 S.D. 220, 238, 136 N.W. 92, 99 (1912). The State's appropriation of this right is compensable under Article VI, § 13. *See Searle v. City of Lead*, 10 S.D. 312, 316-22, 73 N.W. 101, 103-05 (1897) (affirming injunction granted to prevent abutting landowner's loss of access to street by city's regrading of the street). Because the State filed a declaration of taking, title to JBE's right of access to the abutting highway Cliff Avenue[1] vested in the State—and JBE became

---

1.     The dissent claims that "access to Cliff Avenue was not the only interest affected." *Infra* ¶ 31. Similarly, Justice Kern also suggests throughout her statement of the facts and analysis that the declaration took more than JBE's right of access to the abutting highway. *See supra* ¶¶ 3, 12, 21; *infra* ¶ 31 (asserting the declaration took JBE's right to access its property rather than its right to access Cliff Avenue). A careful review of the record reveals that Justice Kern's view of the right acquired is erroneous.

   The parties agree that the property interest described in the State's declaration of taking is simply the right of access *to* Cliff Avenue *from* JBE's property. In its briefs to this Court, JBE characterizes the property interest as "the right to control Perkins's direct access to Cliff Avenue." At oral argument, JBE similarly framed the issue as the State taking access *to* a public highway *from* JBE's two lots. Likewise, the State describes the property interest in its brief as "access control across the Property frontage." At oral argument, the State further explained that the purpose of the amended resolution was to acquire JBE's right to access Cliff Avenue from its parking lot (which spanned Lot 19 and a portion of Lot 18).

   Documentary evidence in the record is consistent with the parties' written submissions and oral arguments. The project maps attached to the declaration of taking include a dotted line along the front of JBE's property, separating it from Cliff Avenue. This line is unambiguously labeled "new control of access." In correspondence to JBE shortly after the declaration was filed, the State explained: "DOT originally planned to eliminate the direct access approach between the Perkins property and Cliff Avenue. DOT ultimately changed the plans to allow this direct approach to remain." After the State filed its amended plan, it again explained in correspondence to JBE that "the [amended] plans reflect no taking of any easements or access rights across the Perkins frontage."

-12-

entitled to just compensation for that right—when JBE waived its right to a hearing on the necessity of the taking. SDCL 31-19-24.[2]

[¶25.] Even so, the circuit court granted summary judgment in favor of the State because subsequent to filing the declaration of taking, the State decided that acquiring JBE's right of access was no longer required and amended its construction plan. Thereafter, the State requested summary judgment "on the grounds that [the State had] not taken or damaged any compensable property interest of [JBE]." Thus, the State attempted to abandon the taking. Relying on our decision *Richey Motor Co.*, the circuit court essentially agreed, concluding that the State fully mitigated any damage caused by the State's declaration of taking and that consequently, JBE was not entitled to any compensation.

[¶26.] The circuit court erred by granting summary judgment. The State is explicitly prohibited from abandoning a condemnation proceeding after filing a declaration of taking. SDCL 31-19-35. The circuit court misinterpreted *Richey Motor Co.* as providing an avenue for the State to abandon or reduce the scope of a

---

2. The State may condemn property for highway purposes by simply filing a petition in circuit court. SDCL 31-19-3. In such a case, the State does not obtain title to the subject property until after a jury determines the amount of compensation due and the verdict is recorded. *See* SDCL 31-19-18. However, the State can effect an immediate taking by filing a declaration of taking with the petition. SDCL 31-19-23. In such a case, the property owner may demand a hearing in circuit court to determine whether the condemnation is necessary. SDCL 31-19-10.1. Title vests in the State if after the hearing, the circuit court concludes the acquisition is necessary. SDCL 31-19-24. Alternatively, title vests upon the property owner's waiver of the necessity hearing. *Id.*

taking that has already occurred.[3] In that case, the State filed a declaration of taking to immediately condemn 0.24 acre of land for a drainage ditch, which would have completely bisected the subject property and destroyed direct access between the two remaining parcels. The circuit court refused to allow the State to amend its declaration of taking to reflect the State's subsequent decision to install an asphalt crossing over the drainage ditch, which would restore direct access between the two parcels. *Richey Motor Co.*, 270 N.W.2d at 49. We reversed and held "that the [S]tate must be allowed to present evidence showing actions it will take that will have the effect of minimizing consequential damages *to the remainder* of the landowner's property." *Id.* at 51 (emphasis added). In other words, once title vests in the State, it is not permitted to reduce or abandon the interest acquired; it is merely permitted to minimize damage to the landowner's remaining property that results from being severed from the property actually taken. *See id.* at 50-51.

[¶27.] Therefore, we reverse the circuit court's order granting summary judgment in favor of the State and remand to have a jury determine the amount of compensation due for the State's acquisition of JBE's right as an abutting landowner to access Cliff Avenue from its property.[4] For the purposes of remand,

---

3. The circuit court concluded:

> [JBE] waived [the] hearing on June 12, 2012—the date of taking. But *Richey* not only allows, but encourages, the DOT to amend its Petition to mitigate the damage to the landowner to reduce the costs to the taxpayers. Here, DOT mitigated the damages by allowing [JBE] to retain its direct access to Cliff Avenue.

4. The dissent would also require the circuit court to determine whether JBE is entitled to compensation for the State's expansion of the turn lane. *See infra*

(continued . . .)

we also offer some further guidance to the circuit court on the issue of

compensation.  The court's conclusion that the State fully mitigated damage to

JBE's property fails to recognize the nature of the interest actually acquired by the

State.  While JBE may still have the *ability* to access Cliff Avenue from its property,

the effect of the State's declaration of taking is that JBE no longer has the *right* to

_____

(. . . continued)

¶ 32.  However, JBE has not argued *on appeal* that the turn-lane expansion constitutes a taking.  Although the circuit court erroneously thought otherwise, a landowner may raise a counterclaim for inverse condemnation in a formal-condemnation proceeding.  Therefore, JBE is free to pursue this theory on remand if it so chooses.  Whereas the dissent raises the issue on JBE's behalf, we leave that choice to JBE.

The dissent further argues that

> to require JBE, upon remand, to assert a counterclaim or file a formal condemnation proceeding is contrary to our analysis in *State v. Miller & Walsh*, 2016 S.D. 88, ___ N.W.2d ___.  In *Miller & Walsh*, we allowed the landowners the opportunity to prove that the State substantially impaired their access as an independent taking despite that they did not plead an independent taking and did not file a counterclaim alleging the impairment of such right.

*Infra* ¶ 33.  The dissent overlooks a distinction between the landowners in these two cases.  Miller and Walsh argued *on appeal* that they were entitled to compensation for loss resulting from the closure of the intersection of Cliff Avenue and 63rd Street.  In contrast, JBE has *not* argued *on appeal* that it is entitled to compensation for loss resulting from the State's expansion of the turn lane.  Thus, there is a clear distinction between these two cases justifying different remand orders.

If JBE does pursue its turn-lane theory as a counterclaim on remand, we note the fact that the turn-lane expansion occurred entirely within a 42-foot strip of land that the State had previously acquired for highway purposes from JBE's predecessor in interest (JBE's title expressly excludes this 42-foot strip).  Therefore, the circuit court should determine whether the State's expansion of the turn lane is within the scope of a previous taking.  *See Morris Family, LLC ex rel. Morris v. S.D. Dep't of Transp.*, 2014 S.D. 97, ¶ 20, 857 N.W.2d 865, 872; *Kirby v. Citizens' Tel. Co. of Sioux Falls*, 17 S.D. 362, 365-67, 97 N.W. 3, 4 (1903); 5 Julius L. Sackman, *Nichols on Eminent Domain* § 16.01[1] (3d ed., rel. 112-12/2013).

do so. Because the State acquired the right to deprive JBE of access to Cliff Avenue, JBE must be compensated under the assumption that the State will do so. 5 Julius L. Sackman, *Nichols on Eminent Domain* § 16.01[1] (3d ed., rel. 112-12/2013) ("[I]n assessing damages, it is not what the condemnor actually does, but what it acquires the right to do, that normally determines the quantum of damage.").

[¶28.] ZINTER, SEVERSON, and WILBUR, Justices, concur on Issue Three.

[¶29.] KERN, Justice, dissents on Issue Three.

[¶30.] KERN, Justice (dissenting).

[¶31.] I agree with the majority that JBE is entitled to have a jury determine just compensation. I disagree, however, with the majority's view that the State condemned only JBE's "control of access" *to Cliff Avenue*. A careful review of the record supports that access to Cliff Avenue was not the only interest affected. First, the declaration of taking and the incorporated resolutions describe JBE's "control of access *of that* *portion of Project No. IM 090(80)397* which lies *within the* West 115.5 feet of Lot 18 and all of Lot 19, except the West 42 feet of said Lot 19." (Emphasis added.) And the maps included by the State contain a notation, "Elm Ent. 63rd St[.]" A reasonable view of the record, therefore, indicates that the State took more than JBE's control of access *to Cliff Avenue*. The declaration of taking refers to JBE's control of access within both Lots 19 and 18. Lot 18 abuts only *63rd Street*. Lot 19 abuts both 63rd Street and Cliff Avenue. On this record, I would not declare as a matter of law what interests the State in fact acquired. The circuit

court improperly resolved this case on summary judgment, and an appellate-level interpretation of the record is unwarranted at this stage. *Supra* ¶ 24 n.1. The "estate or interest . . . as is specified in the declaration" of taking remains to be determined on a more developed record. SDCL 31-19-24.

[¶32.]     I also cannot join the majority on this issue because it requires JBE to file a counterclaim or a "formal-condemnation proceeding" upon remand in order for the circuit court to consider whether the expansion of the turn lane effected an independent taking or damaging. According to the majority, JBE "has *not* argued *on appeal* that it is entitled to compensation for loss resulting from the State's expansion of the turn lane." A review of the posture of this case reveals, however, that the issue whether JBE has a right to compensation for the expansion of the turn lane is before this Court. First, the circuit court directly identified the issue. Second, JBE argues on appeal that it is entitled to have a jury determine compensation for the State's expansion of the turn lane because, in its view, the turn lane is a factor that legitimately bears upon the calculation of the market value of the property before and after the taking. *See* JBE Reply Br. 9.

[¶33.]     Furthermore, to require JBE, upon remand, to assert a counterclaim or file a formal condemnation proceeding is contrary to our analysis in *State v. Miller & Walsh*, 2016 S.D. 88, ___ N.W.2d ___. In *Miller & Walsh*, we allowed the landowners the opportunity to prove that the State substantially impaired their access as an independent taking despite that they did not plead an independent taking and did not file a counterclaim alleging the impairment of such right. The majority distinguishes *Miller & Walsh* because Miller and Walsh argued *on appeal*

-17-

that they were entitled to compensation for the closure of the Intersection. It is a distinction without a difference. JBE, *on appeal*, asserts a right to compensation for the State's expansion of the turn lane because, just as Miller and Walsh argued, JBE believes a landowner is entitled to compensation for loss caused by the State's public improvement *as a whole*. We gave Miller and Walsh the opportunity on remand to establish that the State substantially impaired their access in part because the circuit court wrongly applied *Schuler*. Here, the circuit court incorrectly applied *Richey*, and we should allow JBE the opportunity to prove upon remand that the expansion of the turn lane constituted a taking under the law applicable to inverse condemnation without further amendment of its pleadings or by filing an independent inverse condemnation action.[5]

[¶34.] In *Rupert v. City of Rapid City*, we recognized that "where no part of an owner's land is taken, but because of the taking and use of other property so located as to cause damage to an owner's land, such damage is compensable[.]" 2013 S.D. 13, ¶ 9, 827 N.W.2d 55, 60-61 (quoting *Krier v. Dell Rapids Twp.*, 2006 S.D. 10, ¶ 23, 709 N.W.2d 841, 847). For JBE to establish a maintainable action, it must prove "an invasion of the land by 'water, earth, sand, or other matter or artificial structures placed upon it, so as effectually to destroy or impair its

---

5. An action for compensation for a taking or damaging can be initiated by the State or the landowner. When the landowner initiates the action, it is termed inverse condemnation. A State-initiated action, on the other hand, is an eminent domain proceeding. Here, the State initiated this eminent domain proceeding against JBE. And, under *Richey*, JBE is entitled to "just compensation based upon the actual situation" existing at the conclusion of the public improvement. *See* 270 N.W.2d at 51.

usefulness[.]'" *Id.* ¶ 10 (quoting *Searle,* 10 S.D. at 316, 73 N.W. at 103). Next, JBE must establish that the injury to its property is peculiar to JBE and is not of a kind suffered by the public as a whole. If the circuit court were to conclude that JBE proved these factors by the greater convincing force of the evidence, JBE would be entitled to have a jury determine just compensation for this claim as well without further amendment of the pleadings.