GILBERTSON, Chief Justice (dissenting). [¶60.] I respectfully dissent. The State’s construction of Highway 11 in 1949 is not a proximate cause of Landowners’ loss in 2010 because such loss was not the natural and probable consequence of the construction of Highway 11. And if it was the natural and probable consequence, then such loss was already within the scope of the State’s right to construct Highway 11. That aside, if the State is required to compensate Landowners, then under the facts of this case, the State necessarily has a permanent drainage easement. Finally, Landowners’ settlement with the City should have been deducted from the amount of compensation awarded by the jury. Therefore, I would reverse. 1. Landowners did not prove the construction of Highway 11 is a proximate cause of their loss. [¶61.] The State argues that the construction of Highway 11 in 1949 is not a proximate cause of Landowners’ loss in 2010. According to the South Dakota Constitution, “Private property shall not be taken for public use, or damaged, without just compensation ....” S.D, Const, art. VI, § 13. “An inverse condemnation action is an eminent domain proceeding initiated by the property owner rather than the condemner.” Schliem v. State ex rel. Dep’t of Transp., 2016 S.D. 90, ¶ 13 n.9, 888 N.W.2d 217, 224 n.9 (quoting Breidert v. S. Pac. Co., 61 Cal.2d 659, 39 Cal.Rptr. 903, 394 P.2d 719, 721 n.1 (1964) (en banc)). “Inverse condemnation law-is tied to, and parallels, tort law. One of the principles of tort law that is applicable to the inverse condemnation context is proximate cause.” 9 Patrick J. Rohan & Melvin A. Reskin, Nichols on Eminent Domain § G34.03[1] (3d ed., rel. 125-5/2017); see also Schliem, 2016 S.D. 90, ¶ 14, 888 N.W.2d at 224 (limiting compensation under Article VI, § 13, to legal injuries). A property owner who fails to establish proximate causation is not entitled to compensation. See 9 Ro-han & Reskin, supra, § G34.03[l]. [¶62.] As' the Court notes, “[pjroximate cause is defined as ‘a cause that produces a result in a natural and probable sequence and without which the result would not have occurred.’ ” Howard v. Bennett, 2017 S.D. 17, ¶ 7, 894 N.W.2d 391, 395 (emphasis added) (quoting Hamilton v. Sommers, 2014 S.D. 76, ¶ 39, 855 N.W.2d 855, 867). The first half of this definition requires the plaintiff to prove the loss was foreseeable. Hamilton, 2014 S.D. 76, ¶ 39, 855 N.W.2d at 867; State v. Ruth, 9 S.D. 84, 92-93, 68 N.W. 189, 191 (1896) (“[I]n order.to warrant a finding that ... an act ... is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the ... act, and that it ought to have been foreseen, in the light of the attending circumstances.”). The second half requires the plaintiff to prove the conduct complained of is a but-for cause of the loss. Compare Howard, 2017 S.D. 17, ¶ 7, 894 N.W.2d at 395 (requiring a cause to be one “without which the result would not have occurred” (quoting Hamilton, 2014 S.D. 76, ¶ 39, 855 N.W.2d at 867)), with Cause, Black’s Law Dictionary (10th ed. 2014) (defining the term but-for cause as “[tjhe cause without which the event could not have occurred”). Thus, proving but-for causation is not sufficient to establish a right to compensation—the plaintiff also has the burden of proving foreseeability. [¶63.] In this case, Landowners had the burden of proving their losses were foreseeable (i.e., probable) at the time the State constructed Highway 11. Hyde v. Minn., Dak. & Pac. Ry. Co., 29 S.D. 220, 231, 136 N.W. 92, 96 (1912) (“The damages to be recompensed for under the law of eminent domain are ... only such as could be anticipated by a jury in the trial of an action brought before the ‘damage’ had taken place.”).[15] The circuit court found that when Highway 11 was constructed in 1949, the surrounding area was undeveloped farmland. The first' of Landowners’ homes was not constructed until 1974. The court also found that none of Landowners’ properties had been flooded prior to July 2010. And as Landowners recognized in their complaint, the upstream population contributing to runoff increased significantly between 1949 and 2010.[16] Thus, Landowners had the burden of proving that when the State constructed Highway 11 in 1949, it was probable—not merely possible—that 61 years later, runoff from a population base more than triple the size of that in 1949 would combine with severe rainstorms to destroy homes that had not been built in a community that did not exist. [¶64.] Landowners did not provide any evidence relevant to the question of foreseeability. The circuit court’s factual findings do not address this issue.[17] Likewise, in their brief to this Court, Landowners argue only that “[a]bsent the State improvement, water would have flown [sic] freely from the properties.” As the Court notes, Landowners’ expert witness “concluded that without the Highway 11 blockage, the water would not have gone over the ditch block south of the 48-inch culverts, down the west ditch of Highway 11, causing damage to Landowners’ properties.” Supra ¶ 24. And in their brief to this Court, Landowners similarly summarize their expert’s testimony: “Mr. Mainelli testified that but for the State’s obstruction of the natural drainageway with Highway 11 and the inadequate culverts passing underneath, the property would not have flooded.” (Emphasis added.) Thus, these findings and this testimony only establish but-for causation (i.e., that the construction of Highway 11 is a cause “without which the result would, not, have occurred”). See Howard, 2017 S.D. 17, ¶ 7, 894 N.W.2d at 395; Cause, Black’s Law Dictionary (10th ed. 2014). These findings and this testimony simply do not address the question of foreseeability.[18] [¶65.] In light of the foregoing, Landowners are not entitled to compensation. As previously noted, Landowners had the burden of proving proximate causation. 9 Rohan & Reskin, supra ¶ 61,-§ G34.03[l], While Landowners’ expert testimony establishes that the construction of Highway 11 is a but-for cause of Landowners’ loss, it' does not address the question whether Landowners’ loss' in 2010 is the natural and probable consequence of the construction of Highway 11 in 1949. In other words, Landowners’ evidence does not address foreseeability—a necessary component of proximate causation. Hamilton, 2014 S.D. 76, ¶ 39, 855 N.W.2d at 867; Ruth, 9 S.D. at 92-93, 68 N.W. at 191. Because the Court today affirms solely on a showing of but-for causation, any public improvement undertaken by the State will result in essentially unlimited liability. As the United States Supreme Court has noted: ' • ; In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would “set society on edge and fill the courts with endless litigation.” Holmes v. Sec. Inv’r Prot. Corp., 503 U.S. 258, 266 n.10, 112 S.Ct. 1311, 1316 n.10, 117 L.Ed.2d 532 (1992) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 41, at 264 (5th ed. 1984)).[19] Therefore, the absence of evidence on the issue of foreseeability is singularly sufficient to warrant reversal. 2. Even if the construction of Highway 11 is a proximate cause of Landowners’ loss, their claims are barred by sovereign immunity. [¶66.] The State argues that Landowners’ claims “sounded in tort” and are therefore barred by the doctrine of sovereign immunity. Landowners respond that their cause of action is indeed one of inverse condemnation. While the State is generally immune to liability for the torts of negligence and trespass, the State cannot avoid liability when it invokes its sovereign power of eminent domain. See Rupert v. City of Rapid City, 2013 S.D. 13, ¶ 43, 827 N.W.2d 55, 71. Therefore, in determining whether Landowners are entitled to compensation, the threshold question in this case is whether the claim presented by Landowners is actually one of inverse condemnation or if it is instead one of tort. In answering this question, we may not simply accept the label used in the complaint. “[T]he viability of a takings claim is dependent upon ‘situation-specific factual inquiries.’ ” Id. ¶ 10, 827 N.W.2d at 61 (quoting Ark. Game & Fish Comm’n v. United States, 568 U.S. 23, 32, 133 S.Ct. 511, 518, 184 L.Ed.2d 417 (2012)). [¶67.] As we recently explained, “a landowner is not entitled to compensation under Article VI simply because he has suffered some loss or his property has been devalued as a result of state action.” Schliem, 2016 S.D. 90, ¶ 14, 888 N.W.2d at 224. “[T]he word damaged, as used in the South Dakota Constitution, contemplates only legal injury.” Id. ¶ 14, 888 N.W.2d at 225. Legal injury does not exist when an alleged loss falls within the scope of a right previously acquired by the State. See State ex rel. Dep’t of Transp. v. JB Enters., Inc., 2016 S.D. 89, ¶ 27 n.4, 889 N.W.2d 131, 138 n.4; Morris Family, LLC ex rel. Morris v. S.D. Dep’t of Transp., 2014 S.D. 97, ¶ 20, 857 N.W.2d 865, 872; Kirby v. Citizens’ Tel. Co. of Sioux Falls, 17 S.D. 362, 365-67, 97 N.W. 3, 4 (1903); Hannaher v. St. Paul, Minneapolis & Man. Ry. Co., 5 Dakota 1, 16-17, 37 N.W. 717, 721-22 (1888). Thus, when the State acquires the right to construct a highway, an inverse-condemnation action may not be subsequently maintained “if the injury complained of was a natural and probable result of the construction!.]” Hannaher, 5 Dakota at 16, 37 N.W. at 722 (emphasis added), cited with approval in White v. Chi., Milwaukee & St. Paul Ry. Co., 1 S.D. 326, 331, 47 N.W. 146, 147 (1890). [¶68.] This Court’s predecessor decided a substantially similar issue in Hannaher v. St. Paul, Minneapolis & Manitoba Railway Co., 5 Dakota 1, 37 N.W. 717 (1888). In that case, a railway company obtained the light to construct a railroad across the land of several property owners. Id. at 8, 37 N.W. at 717-18. The company placed the tracks on a two-foot-tall embankment it constructed using earth removed from an adjacent ditch. Id. The embankment and ditch altered the existing natural watercourse, causing water to travel down the ditch and discharge onto crop land that had not previously been flooded. Id. In holding there was no right to compensation, the Supreme Court of the Territory of Dakota said: The company condemns or purchases its right of way for railroad purposes. It builds its road, with its enbankments [sic], ditches, and culverts, for railroad purposes, and it is only required to construct its road in a manner suitable and proper for railroad purposes, And in payment for its right of way it is required to make compensation for the injuries sustained by the adjacent landowners by the use of such right of way granted or condemned for railroad purposes. ... [T]he company is required to pay such damages as may reasonably and naturally follow from the occupation of its right of way for railroad purposes .... It follows, as a necessary corollary, that, if the injury complained of was a natural and probable result of the construction of the railroad along, the right of way granted by plaintiffs, it was compensated for in the consideration of the grant, and an action cannot be maintained therefor. Id. at 16, 37 N.W. at 722 (emphasis added). For purposes of eminent domain, a railroad is a highway. See S.D, Const, art. VI, § 13 (“The fee of land taken for railroad tracks or other highways shall remain in such owners, subject to the use for which it is taken.” (emphasis added)). Thus, the construction of a highway in the present case is not materially distinguishable from the construction of a railroad in Hannaher. [¶69.] In light of the foregoing, Landowners are not entitled to compensation. If the flooding that occurred is a natural and probable consequence of the State’s construction of Highway 11, then such is within the scope of a taking that occurred in 1949. See Hannaher, 5 Dakota at 16, 37 N.W. at 722; see also JB Enters., Inc., 2016 S.D. 89, ¶ 27 n.4, 889 N.W.2d at 138 n.4; Morris Family, LLC, 2014 S.D. 97, ¶ 20, 857 N.W.2d at 872; Kirby, 17 S.D. at 365-67, 97 N.W. at 4. Regardless of whether the State ever paid compensation for that taking, the right to such compensation does not belong to Landowners. See Palazzolo v. Rhode Island, 533 U.S. 606, 628, 121 S.Ct. 2448, 2463, 150 L.Ed.2d 592 (2001) (“[I]t is a general rule of the law of eminent domain that any award goes to the owner at the time of the taking, and that the right to compensation is not passed to a subsequent purchaser.”), quoted in Johns v. Black Hills Power, Inc., 2006 S.D. 85, ¶ 12, 722 N.W.2d 554, 558. Thus, Landowner's do not have an inverse-condemnation claim. As originally pleaded in their complaint, Landowners’ claim is simply one of negligence and trespass, which as the State points out, is barred by the doctrine of sovereign immunity. See Rupert, 2013 S.D. 13, ¶ 43, 827 N.W.2d at 70-71. Therefore, in the alternative, I would also reverse on this basis. 3. If Landowners are entitled to compensation, the State necessarily has a drainage easement. [¶70.] Alternatively, the State argues that if the jury verdict is affirmed, Landowners should not be compensated for future floods. Quoting Heezen v. Aurora County, 83 S.D. 198, 207, 157 N.W.2d 26, 31 (1968), the State contends it will have “paid ‘for the right to permanently flood’ [Landowners’] properties.” Landowners respond that “[t]he State’s request for a permanent drainage easement over Landowner’s real estate is as bizarre as it is offensive” and that “a drainage easement over the property was never pled, never argued, never described, never valued, never noticed, and never even mentioned.” While the Court agrees “that the State can obtain an easement in an inverse condemnation action when permanent damages are awarded[,]” the Court nevertheless concludes that the State had the burden of specifically defining such easement and that the.State.failed to do so. Supra ¶49., Even so, drawing a distinction between an “easement” and a “right” of use, the Court goes on to hold that “the State .., has a right to permanently flood Landowners’ properties ‘to the extent of the flooding here involved.’ ” Supra ¶ 48 (quoting Heezen, 83 S.D. at 207, 157 N.W.2d at 31). [¶71.] This issue turns on understanding the difference between government action that takes property and government action that merely damages property. Property is taken when the State appropriates it for public use; property is damaged when the State does-not appropriate it but nevertheless deprives its owner of its use. See Schliem, 2016 S.D. 90, ¶ 12, 888 N.W.2d at 223-24; Hyde, 29 S.D. at 229, 136 N.W. at 95. The distinction is critical in this case. If the basis for Landowners’ claim to compensation is that the State , appropriated Landowners’ property for the public use of holding overflow from the Spring Creek Tributary, then the necessary implication of Landowners’ claim is that the State already has such an easement. Thus, our choices would be either to (1) recognize- the State’s appropriation of Landowners’ property and grant compensation for it or (2) deny the existence of the easement and, therefore, deny compensation. [¶72.) Landowners’ pleadings and argument allege the State appropriated their property for public use. Throughout this litigation, Landowners have continually asserted—and the circuit court found—that the State caused their properties to be invaded by water and that such invasions would recur indefinitely. It is well established that the physical invasion of property is an appropriation of that property— i-.e., a taking, E.g., Schliem, 2016 S.D. 90, ¶ 12, 888 N.W.2d at 223; Searle v. City of Lead, 10 S.D. 312, 316, 73 N.W. 101, 103 (1897) (“[W]here ... the estate [is], actually invaded by superinduced additions of water ... so as effectually to destroy or impair its usefulness', it is a ‘taking,’ within the meaning of the constitution.”), It is equally well established that periodic flooding imposes a permanent liability on land and is, therefore, a permahent taking. E.g., Ark. Game & Fish Comm’n, 568 U.S. at 32, 133 S.Ct. at 519 (“[RJegularly recurring flooding [gives] rise to a takings claim ...(emphasis added)).[20] So whether Landowners realized it or not, their argument from the beginning has necessarily been that the State permanently appropriated their land for the purpose of draining water—i.e., that the State took a drainage easement. There is nothing “bizarre” or “offensive” about'the State holding Landowners to their own assertions.[21] [¶73.] In light of Landowners’ pleadings and argument, this case should be resolved like Heezen, which is materially indistinguishable from the present case. In Heezen, several property owners filed an inverse-condemnation action alleging that the regrading of a highway diverted water into a lake from a watershed that had not previously drained into the lake. Heezen, 83 S.D. at 200, 157 N.W.2d at 28. The extra drainage increased the lake’s depth from about 3 feet to 12 feet, causing it to overflow and flood the plaintiffs’ properties. Id. at 203, 157 N.W.2d at 29. The circuit court concluded a taking, had occurred, and it awarded both compensation and an injunction in favor of the property owners. Id. at 200, 204, 157 N.W.2d at 28, 30. On appeal, we affirmed the award of compensation but reversed the injunctive relief. Id. at 207, 157 N.W.2d at 31-32. We noted: In trying and deciding [the complaints,] the measure of damages applied by the court was the difference in market value of these farms before and after the flooding. This is the. measure of compensation which governs where part of a tract is. permanently taken, or damaged. From .this it would follow that the county. was being required to pay for the right to permanently flood these farms to the extent of the flooding here involved. The injunctive and mandatory provisions of these judgments are inconsistent with such right. Id. at 206-07, 157 N.W.2d at 31 (emphasis added); see also 9 Rohan & Reskin, supra ¶ 61, § G34.03[3][b] (“[A] landowner cannot obtain injunctive relief , and get damages for a permanent taking.”). Notably, we did not require a detailed, metes-and-bounds description- of the resulting easement. We simply defined the - easement in terms of what the property owners had proven—i.e,, “to the extent of the flooding here involved.” Heezen, 83 S.D. at 207, 157 N.W.2d at 31. [¶74.] As in Heezen, the measure of compensation awarded in the present case was the difference in the- fair market value of the properties before and after the flooding. Thus-, Landowners are being compensated for a permanent taking. “From this it would follow that 'the- [State- is] being required to pay for the right to permanently flood these [properties] to the extent of the flooding here involved.” Id. (emphasis added). In practical terms, if the State is required to compensate Landowners for a permanent taking, then the State has simply paid for the right to leave Highway 11 as it has existed for the last 68 years. Under Heezen, no more is required to define the property interest that Landowners assert the State appropriated in this case. [¶75.] Despite claiming to “rely on Heezen,” supra ¶ 50, the Court disregards a number of widely accepted principles of inverse condemnation. "While the-Court accepts the circuit court’s findings that the State physically invaded Landowners’ land and will do so again during every eight-year-or-greater rain event, it nevertheless claims “the State failed to define the scope and boundaries of any purported easement or present evidence on valuation.” Supra ¶ 49. According to the Court, “the principle of res judicata ... providefs] more specific relief in this case.” Supra ¶ 50. There are several problems with the Court’s analysis. [¶76.] First and foremost, it is erroneous to view the State’s claim of an easement as a counterclaim for which this Court may choose a particular “relief.” As explained above, the premise of Landowners’ claim is that the State permanently appropriated their land for public use. Thus, if Landowners are entitled to compensation based on their claim, the State necessarily already has an easement (i.e., a right to use Landowners’ property for a specific, limited purpose) by virtue of its sovereign power of eminent domain. And if the State does not already have an easement, then there is no basis for compensating Landowners. [¶77.] The Court’s view also incorrectly assigns the burden of proof to the State. In an inverse-condemnation action, it is the aggrieved property owner who has the burden of proving the State appropriated a property interest. 5 Julius L. Sackman, Nichols on Eminent Domain § 18.02[2][a] (3d ed., rel. 112—12/2013). Such proof necessarily includes specifically identifying the property interest taken. If the property owner is successful, the property interest formally appropriated by the State is simply that identified by the property owner. As in Heezen, because the burden of proof is on the property owner, the property interest appropriated by the State is whatever the property owner proves the State took. See 83 S.D. at 206-07, 157 N.W.2d at 31. Thus, there is no need for the State to introduce evidence establishing a taking that it claims did not occur. See Rupert, 2013 S.D. 13, ¶ 37, 827 N.W.2d at 68 (“In condemnation cases, the governmental entity essentially admits that a taking will occuh because it institutes the formal condemnation proceedings to do so. In contrast, in inverse condemnation cases, the governmental entity may dispute whether or not a taking or damaging of private property has even occurred,”). If the easement at issue has not been properly identified, then it is the property owner who has failed to prove an essential element of the claim. [¶78.] The Court’s claim that the State failed to introduce evidence -establishing the before-and-after market values of the properties is similarly problematic. “On the question of damages in an inverse condemnation proceeding, the burden of proof is on the landowner.” 3 Julius L. Sackman, Nichols on Eminent Domain § 8.01[5][d] (3d ed., rel. 96-12/2009). By not introducing evidence of valuation, the State merely runs the risk of paying more than it should by not disputing the property owner’s valuations. [¶79.] Additionally, the Court does not explain any meaningful distinction between Heezen and the Court’s claim-preclusion approach.[22] As noted above, this' Court did not require a particular description for the easement recognized in Heezen. See 83 S.D. at 207, 157 N.W.2d at 31. This is because in an inverse-condemnation claim, the particulars of the right acquired are found in the facts of the case. As .in Heezen, Landowners in this case presented, documentary and .testimonial evidence establishing the current drainage characteristics of Highway 11, the extent of flooding that occurred, and the expected frequency of such flooding. Determining whether future flooding is within the scope of the right acquired by the State in this case is simply a matter of comparing the extent or frequency of the future flooding to that involved in this case and determining whether the State caused such change. The Court’s claim-preclusion approach requires essentially the same analysis. [¶80.] If Landowners were entitled to compensation, I would adhere to this Court’s opinion in Heezen. As pleaded and argued by Landowners, the State appropriated a property interest by permanently burdening Landowners’ properties with recurring, physical invasions of water. Although issue preclusion may also bar Landowners from bringing another claim for compensation in the future, the existence of a second basis for denying future relief to Landowners does hot solve' the Court’s analytical problem of concluding the State took but does hot possess Landowners’ property. Even if Landowners were entitled to compensation, I would reverse the circuit court on this issue and recognize the State’s easement—i.e., the right to use Landowners’ properties for the specific, limited purpose of flooding to the extent and frequency proved by Landowners. • 4. If Landowners are entitled to compensation, the State’s cross-claim should have been presented to the jury. [¶81.] Finally, the State argues the circuit court erred by dismissing the State’s cross-claim against the City of Sioux Falls. Likening itself and the City to joint tort-feasors, the State concludes any compensation awarded to Landowners should be offset by the City’s liability to Landowners. As the State points out, Landowners’ complaint , treated the State, and City as joint condemnors,[23] but Landowners set-tied with the City prior to trial. Landowners argue principles of contribution and indemnification only apply in tort actions, not eminent domain. Landowners also argue the circuit court correctly concluded the State failed to prove-fault on the part of the City. The Court agrees with Landowners, holding that “the State was not entitled to file a cross-claim against the City seeking contribution under the Joint Tortfeasor’s Act.” Supra ¶ 40.[24] [¶82.] The. Court , overlooks the common-law basis for extending tort principles (like those found in the Joint Tortfeasors Act) to an inverse-condemnation claim. As the Court correctly notes, it “is within our purview” to apply common-law principles to inverse condemnation. Supra ¶ 40. But under the common law, the total liability of joint condemnors cannot exceed the legal injury actually suffered, by a landowner.. This Court has long held that compensation “in an eminent domain case [is] not ‘ “manna from heaven”; [it] must be based on actual loss of value’ ” Rupert, 2013 S.D. 13, ¶ 27, 827 N.W.2d at 66 (emphasis added) (quoting Lawrence Cty. v. Miller, 2010 S.D. 60, ¶ 21, 786 N.W.2d 360, 369). As the United States Supreme Court has explained: The just compensation required by the constitution to be made to the owner is to be measured by the loss caused .to him by the appropriation, He is entitled to receive the value of what he has been deprived of, and no more. To award him less would be unjust to him; to award him more would be wngust to the public. Bauman v. Ross, 167 U.S. 548, 574, 17 S.Ct. 966, 976, 42 L.Ed. 270 (1897) (emphasis added). By refusing to acknowledge that the compensation Landowners received from the City reduced the State’s total liability, the Court in essence holds that Landowners are entitled to receive more than -the value of what they have been deprived of. The State’s invitation to apply the principles embodied in the Joint Tortfeasors Act, however, preserves our common-law rules of compensation. [¶83.] The Court further holds that “even if the State was entitled to contribution under the common law, relating to inverse condemnation, it failed to prove entitlement to that right.” Supra ¶ 41. But this holding is premised on the erroneous view that it is just for Landowners to receive more than the value of what they have been deprived of. Overcompensating Landowners is no more just than under-compensating them. Bauman, 167 U.S. at 574, 17 S.Ct. at 976; Rupert, 2013 S.D. 13, ¶ 27, 827 N.W.2d at 66. Therefore, a con-demnor’s right to an offset requires ho more proof than that a joint condemnor partially compensated the person from which property was taken. It is undisputed that Landowners settled with the City. At a minimum, then, the State should have been permitted to present evidence to the jury establishing the amount of that settlement, because the State’s total liability is necessarily reduced by the same amount. Conclusion [¶84.] Landowners are not entitled to compensation in this case. They did not offer any proof establishing that their loss in 2010 was the natural and probable consequence of the construction of Highway 11 in 1949; therefore, they did not meet them burden of, proving proximate causation. If their loss was a natural and probable consequence of the construction of Highway 11, then such was within the scope of the right acquired by the State to construct the highway. If Landowners are entitled to compensation, then the State necessarily has paid for a drainage easement. Finally, ’the circuit courts dismissal of the State’s cross-claim resulted in ovér-compensating Landowners. Therefore, I would reverse. , . The Court claims this issue statement “misapprehends how this Court views foreseeability as it relates to duty and causation.” Supra ¶ 27. According to the Court, "Landowners are not required to prove that their losses were foreseeable when the State constructed Highway 11 in 1949[.]” Id. There are several problems with this claim. First and most importantly, the Court's claim directly contradicts this Court’s controlling precedent as well as other authorities. Compare Hyde, 29 S.D. at 231, 136 N.W. at 96 ("The damages to be recompensed for under the law of eminent domain are ... such as could be anticipated by a jury in the trial of an action brought before [(i.e., not after)] the 'damage' had taken place." (emphasis add-ed)), and 4A Julius L; Sackman, Nichols on Eminent Domain §-14.03[2][c][iv] (3d ed., rel. 124-11/2016) ("Damages that are too remote . to have been foreseeable at the time of the taking ... are not consequences of the taking and are generally not recoverable as just compensation.” (emphasis added)), with supra ¶ 27 ("Landowners are not required to prove that their losses were foreseeable when the State constructed Highway 11 in 1949[.]”). Moreover, the case relied on by the Court only undermines the Court's conclusion that Landowners were not required to prove their losses were foreseeable when the action at issue occurred, Like the statement it disagrees with, the Court claims that "[t]he standard is whether the damage ‘ought to have.been foreseen in the light of the attending circumstances.’ ” Supra ¶ 27 (emphasis added) (quoting Musch v. H-D Coop., Inc., 487 N.W.2d 623, 625 (S.D. 1992)). In Musch, we specifically rejected the view that • foreseeability should be determined by “looking back from the harm to the actor's ,.. conduct[.]” 487 N.W.2d at 624, 626 (quoting Restatement (Second) of .Torts § 435 (Am. Law Inst. 1965)). . In their complaint, Landowners asserted that "[t]he population of Sioux Falls in 1,950 was approximately 52,699 and the surrounding metropolitan statistical area totaled 70,-910.” They also asserted that "[i]n 2010, the population of Sioux Falls was 156,500 and the municipal statistical area was 235,300.” Thus, according to Landowners’ pleadings, the Sioux Falls area experienced an increase in population of greater than 300% between the time of Highway 11 's construction and the flooding of Landowners’ properties in 2010. . In fact, the circuit court's factual findings do not explicitly identify the act that amounted to condemnation, nor do they identify the date of taking, This alone warrants reversal and remand. . The Court-concludes that “[although-the court did not use the precise terms of 'foreseeability' or ‘natural and probable sequence,’ the court's findings are sufficient to sustain a finding of foreseeability for the purpose of proximate cause." Supra ¶28. Yet, the only factual finding identified by the Court that even remotely addresses any concept of foreseeability is the circuit court’s finding that "the State knew or should have known that an eight-year rain event and above would cause flooding to Plaintiffs' property as a result of the Highway 11 blockage of the natural drainage.” Id. But as the Court acknowledges, this finding refers only to the adequacy of drainage at the time of the 2010 resurfacing project. This finding does not refer to the adequacy of drainage at the time Highway 11 was constructed in 1949—when the surrounding area was farmland, devoid of residences, and subject to runoff from a’ substantially smaller population base.’ The circuit court explicitly found that none of the properties at issue had ever flooded prior to 2010. . There is no basis for a bright-line rule of compensation commencing in 1949. While this specific road was constructed in 1949, South Dakota has been constructing roads since statehood in 1889, and under the Court’s theory, South Dakota would assume liability to a private landowner who experiences such a flood loss no matter when the highway was constructed. . See also United States v. Cress, 243 U.S. 316, 329, 37 S.Ct. 380, 385, 61 L.Ed. 746 (1917) (“[W]here ■... land' is' not constantly but only at intervals overflowed, the fee may be permitted to remain in the owner, subject to an easement in the [State] to overflow it with water Long v. City of Athens, 24 So.3d 1110, 1118 (Ala. Civ. App. 2009); K & W Elec., Inc. v. State, 712 N.W.2d 107, 116 (Iowa 2006); Spaeth v. City of Plymouth, 344 N.W.2d 815, 822 (Minn. 1984); Allianz Global Risks U.S. Ins. Co. v. State, 161 N.H. 121, 13 A.3d 256, 260 (2010); Lea Co. v. N.C. Bd. of Transp., 308 N.C. 603, 304 S.E.2d 164, 175 (1983); State ex rel. Doner v. Zody, 130 Ohio St.3d 446, 958 N.E.2d 1235, 1248-49 (2011); State ex rel. Dep't of Transp. v. Hoebel, 594 P.2d 1213, 1215 (Okla. 1979) ("The majority rule in this country is that flooding, whether permanent or recurring, may constitute a \t]aking if the flooding is severe enough so as to effectively destroy or impair the land's usefulness.” (emphasis added)); Dunn v. City of Milwaukie, 355 Or. 339, 328 P.3d 1261, 1271 n.13 (2014) (en banc); Colum. Venture, LLC v. Richland Cty., 413 S.C. 423, 776 S.E.2d 900, 911 (2015); Bennett v. Tarrant Cty. Water Control & Imp’t Dist. No. 1, 894 S.W.2d 441, 449 (Tex. App. 1995); Colman v. Utah State Land Bd., 795 P.2d 622, 627 (Utah 1990). . Landowners argue their pleadings do not claim the State "took” property, However, the label used by Landowners is not disposi-tive. The question whether the State appropriated a property interest or merely infringed on one without appropriating it is determined by the facts of the case. See Rupert, 2013 S.D. 13, ¶ 10, 827 N.W.2d at 61 ("[T]he viability of a takings claim is dependent upon ‘situation-specific factual inquiries.’ ” (quoting Ark. Game & Fish Comm’n, 568 U.S. at 32, 133 S.Ct. at 518)). By arguing the State subjected their properties to recurring flooding, Landowners necessarily argued the State permanently burdened their properties, thereby appropriating a property interest—i.e., that the State took property. Landowners also argue the State may not appropriate a property interest outside of formal condemnation'proceedings. On the contrary, "[s]tate courts have defined ‘inverse condemnation’ ..... as a cause of action against a governmental defendant to recover the value of property that has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking'agency.” 3 Julius ,L. Sackman, Nichols on Eminent Domain § 8.01[5][b][i] (3d ed., rel. 124-11/2016) (emphasis added); see also Agins v. City of Tiburon, 447 U.S. 255, 258 n.2, 100 S.Ct. 2138, 2140 n.2, 65 L.Ed.2d 106 (1980). This Court has expressly recognized that an uncompensated appropriation of property is nevertheless an appropriation of property. See Johns, 2006 S.D. 85, ¶ 12, 722 N.W.2d at 558 (concluding land upon which telephone pole and guy wires were placed had been appropriated without prior compensation and denying compensation to subsequent purchaser). . The Court cites a single opinion from Missouri for its suggestion that the doctrine of claim preclusion can justify denying the State an easement for which it has been required to pay compensation. Supra ¶ 50 (citing Owen v. City of Springfield, 741 S.W.2d 16, 18-19 (Mo. 1987) (en banc)). Likewise, the secondary authority cited by the Court cites to this same, single case. Contrary to the Court's suggestion, the Missouri court did not set aside elementary condemnation principles in favor of issue preclusion. As this Court did in Heezen, Owen recognized that the condemning authority in that case "appropriated the permanent right, which is in the nature of an easement, to invade landowners’ property.” Owen, 741 S.W.2d at 18 (emphasis added). Only then did the court apply claim preclusion to bar a subsequent action for ádditional elements of compensation that could have been claimed in the initial condemnation proceedings. See id. at 18—19. . Landowners filed a single complaint that named the State and City as codefendants, ■ alleging they worked together and were jointly- liable for Landowners' loss. Specifically, Landowners alleged: 3. ■ The Defendants [ (the State and the City)] have changed the natural flow in a manner that results in the flooding of Plaintiffs' property. 4. The Defendants ■ in co-operation have increased the volume of the flow of surface waters and speed resulting in the flooding of Plaintiffs'property. [[Image here]] 14. From 1949 until 2010, the City of Sioux Falls and the State of South. Dakota, in conclusion [sic] and jointly, planned for the growth of Sioux Falls and the drainage of surface waters into the natural drainage way of Spring Creek Tributary, which abuts the ,property of .the Plaintiffs. [[Image here]] 23. The Defendants must be restrained from placing surface waters from ■ Sioux Falls into the natural drainage way .... In light of Landowners’ pleadings, the State and the City were codefendants on the issue of liability for Landowners' loss stemming from the July 2010 flooding, Because Landowners settled with the City, the State and City are joint condemners. Cf. Schick v. Rodenburg, 397 N.W.2d 464, 468 (S.D. 1986) (“[I]f a plaintiff sues defendants as joint tort-feasors and settles with them, they are joint tort-feasors."). . The State’s cross-claim did not mention the Joint Tortfeasors Act. But it is hardly surprising that the State presents its argument in the form of tort principles. In the ■ complaint,- Landowners pleaded inverse condemnation only as an afterthought to their negligence and trespass claims, Landowners’ inverse-condemnation claim actually incorporated by reference their pleadings relating to negligence, despite the incompatibility of negligence and inverse-condemnation claims. See Hyde, 29 S.D. at 231, 136 N.W. at 96 (‘TT|he question of negligence [is] entirely foreign in the law of eminent domain .... ”).